937 A.2d 404

**Ronald D'ALESSANDRO, Appellee,**

**v.**

**PENNSYLVANIA STATE POLICE, Appellant.**

Supreme Court of Pennsylvania.

Argued Sept. 13, 2006.

Decided Nov. 21, 2007.

502

Thomas John Rozman, Esq., PA State Police, Mechanics-burg, Barry Noah Kramer, Philadelphia, Barbara L. Christie, Barbara Adams, Joanna Reynolds, Harrisburg, and Daniel McGuire, Philadelphia, for Pennsylvania State Police.

Spero Thomas Lappas, Esq., Serratelli, Schiffman, Brown & Calhoon, P.C., Harrisburg, for Ronald D'Alessandro.

BEFORE: CAPPY, C.J., and CASTILLE, NEWMAN, SAYLOR, EAKIN, BAER and BALDWIN, JJ.

**OPINION ANNOUNCING THE JUDGMENT OF THE COURT**

Justice CASTILLE.

In the instant matter, this Court must determine whether there was sufficient basis to deny Ronald D'Alessandro's ("Appellee") application for a license to carry a firearm. The Pennsylvania State Police ("PSP") determined that appellee was ineligible for such license due to his prior conviction for simple assault, 18 Pa.C.S. § 2701, concerning an incident of domestic violence. Appellee filed a challenge to the denial, alleging that his simple assault conviction was not a crime of domestic violence. At the challenge hearing, the PSP present-ed a police report detailing the incident of simple assault. The Office of the Attorney General agreed with the PSP that the police report supported its denial of appellee's application for a firearm. On appeal, the Commonwealth Court reversed upon its determination that the evidence gleaned from the police report to conclude that appellee committed an act of domestic violence was inadmissible and, without that evidence, the PSP

did not prove appellee's disentitlement to a firearms carrying license. Upon the PSP's appeal, we now reverse and remand for proceedings consistent with this Opinion.

On June 30, 2003, appellee applied for a license to carry a firearm pursuant to Section 6109 of the Pennsylvania Uniform Firearms Act of 1995 ("Firearms Act"), 18 Pa.C.S. § 6109. The PSP performed a criminal history search of appellee's record using the Pennsylvania Instant Check System ("PICS"), which revealed his 1990 simple assault conviction. The PSP, therefore, denied the application. On July 14, 2003, appellee filed a PICS challenge with the PSP, which confirmed the denial by letter informing appellee that, pursuant to 18 U.S.C. § 922(g)(9) of the Federal Gun Control Act, any individual who has been convicted in any court of a misdemeanor crime of domestic violence is precluded from obtaining a firearm.[1] The PSP wrote that appellee's 1990 conviction for simple assault qualified as a state misdemeanor offense involving domestic violence. Appellee then appealed to the Office of the Attorney General pursuant to 18 Pa.C.S. § 6111.1(e).[2]

On December 17, 2003, a hearing was held before an Administrative Agency Law Judge ("AALJ"), within the Office of the Attorney General. During the hearing, the PSP introduced appellee's criminal record into evidence, which revealed that appellee was arrested for simple assault/domestic violence on December 10, 1989. Appellee's record contained a "Final

1. Under 18 Pa.C.S. § 6109(e)(1)(xiv), an individual is barred from owning a firearm if prohibited from doing so by a statute of the United States.

2. Pertaining to the PSP's denial of a license to carry a firearm, 18 Pa.C.S. § 6111.1(e) provides:

*(e) Challenge to records.*—Any person who is denied the right to receive, sell, transfer, possess, carry, manufacture or purchase a firearm as a result of the procedures established by this section may challenge the accuracy of that person's criminal history, juvenile delinquency history or mental health record pursuant to a denial by the instantaneous records check in accordance with procedures established by the Pennsylvania State Police. The decision resulting from a challenge under this subsection may be appealed to the Attorney General within 30 days of the decision by the Pennsylvania State Police. The decision of the Attorney General may be appealed to the Commonwealth Court in accordance with court rule.

Disposition Report" which indicated that he was charged with "2701 simple assault (domestic violence)" and that he pled guilty to "simple assault" on April 9, 1990. Final Disposition Report at 1. Appellee's record also included a police report, produced at trial by John Schneider, a witness employed by the PSP who received the report from the Pittsburgh Police Department. The report stated that appellee had "hit the victim, his live in girlfriend, knocking her to the floor, and that she was unconscious." Police Report of 12/10/89. The police report also listed the same address for appellee and the victim.

Over an objection from appellee's counsel that the police report was inadmissible hearsay, the AALJ admitted the police report as a certified record of the Pittsburgh Police Department. Later in the hearing, appellee's counsel renewed his objection to the police report, arguing that it contained internal hearsay. The AALJ again overruled the objection, stating that the report was prepared contemporaneously with the incident and that it was not dispositive of the central question in the case, namely, whether appellee committed a misdemeanor crime of domestic violence.

The record developed at the hearing additionally established that appellee and the victim were having a sexual relationship prior to the assault. Appellee, however, denied that he had been living with the victim when he assaulted her. Appellee testified that the victim was an employee of his and he produced pay stubs in an attempt to show that she was living at a different address at the time of the incident.

Following the hearing, the AALJ issued a written opinion. The AALJ reasoned that the law of firearms eligibility required an application of both federal and state statutes to determine whether appellee committed a crime of domestic violence. The AALJ noted that while 18 U.S.C. § 921(a)(33)(A)(ii) of the Federal Gun Control Act provides a federal classification for a domestic relationship, the Commonwealth has established a broader classification under 23 Pa. C.S. § 6102. Since Section § 6102 characterizes a crime of domestic violence as a crime occurring between former sexual or intimate partners and appellee testified to having a sexual

relationship with the victim prior to the assault, the AALJ concluded that appellee had committed a crime of domestic violence. Accordingly, the AALJ affirmed the denial of appellee's license to carry a firearm.

On appeal, the Commonwealth Court reversed in a 2–1 published panel opinion. *D'Alessandro v. Pa. State Police,* 878 A.2d 133 (Pa.Cmwlth.2005). Senior Judge Jim Flaherty, joined by Judge Bernard L. McGinley, first rejected the AALJ's application of the definition of a domestic relationship listed in Section § 6102, ruling that the proper definition to be utilized in this case is found under Section 921(a)(33)(A)(ii) of the Federal Gun Control Act. Under the relevant federal law, the panel majority stated that the PSP must prove that appellee and the victim cohabitated with each other or that the victim was similarly situated to appellee as a spouse. Addressing the evidence presented by the PSP on this issue, the majority noted that, although the police report of the assault was hearsay, it was properly authenticated pursuant to Section 6103(a) of the Judicial Code, 42 Pa.C.S. § 6103(a), which governs the admissibility of official records. The majority elaborated that, under 42 Pa.C.S. § 6104(b), to be admissible, statements in such records must be recorded pursuant to an official duty and be trustworthy. According to the majority, only statements in the police report relevant to the assault could be deemed trustworthy, namely, statements pertaining to appellee injuring the victim and the addresses listed for both individuals. The majority deemed any reference in the report to the victim being appellee's "live in girlfriend" suspect, apparently as a matter of law, questioning whether such information would be established by an investigating officer. The majority was not persuaded by the fact that appellee and the victim were listed as having the same address, opining that such information does not establish that they had a sexual relationship or even that they cohabitated. The majority then determined that:

> Merely because a police report is admitted into evidence does not make admissible every statement contained therein. Rather, only those facts recorded pursuant to the

official duty involved at that time and only those which indicate a trustworthy source of the facts recalled are admissible. Because it is not clear that it was an official duty of the police officer investigating the assault to make the factual determination of whether or not [appellee] and the victim cohabitated, we must conclude that the facts in the Police Report are not admissible under 42 Pa.C.S. § 6104(b) for the purpose of attempting to establish whether or not [appellee] and the victim cohabitated.

*D'Alessandro,* 878 A.2d at 141–42. Turning to sufficiency review, the majority diminished the record by discounting the report's reference to the victim being appellee's "live in girlfriend." Since the PSP failed to introduce any evidence other than the police report to establish that appellee cohabitated with the victim, the panel held that the PSP failed to establish that appellee had committed a misdemeanor crime of domestic violence as defined under Section 921(a)(33)(A). Therefore, the majority held that the PSP failed to establish that appellee is barred from obtaining a license to carry a firearm under Section 922(g)(9) of the Federal Gun Control Act. Judge Bonnie Brigance Leadbetter (now, President Judge) dissented from the panel majority without filing an opinion.

Following this Court's grant of the PSP's request for further review, the PSP claims that it presented sufficient evidence to prove that appellee's simple assault conviction was a misdemeanor crime of domestic violence under federal law. Specifically, the PSP argues that appellee's testimony that he had a sexual relationship with the victim, coupled with the information contained in the police report that the victim lived at the same address as appellee and was his "live in girlfriend," established that appellee cohabitated with the victim. The PSP contends that the statement in the police report that the victim was appellee's "live in girlfriend" most likely came from appellee himself, who confessed to the assault in the investigating police officer's presence. Appellee's confession, the PSP asserts, is admissible as both an admission of guilt and a statement against interests, indicating that the statement was recorded by an officer pursuant to an official duty

and that it is trustworthy. The PSP notes that the addresses of appellee and his victim were relevant to authorities who may have needed the information for further investigation or in anticipation of a criminal proceeding, which would ensure that the police officer carefully recorded the correct information. Moreover, the PSP argues that neither appellee nor the victim had a motive to lie about his or her residence, nor did the reporting officer have reason to misrepresent the facts. Thus, it is logical to conclude that the parties were cohabitating when they provided the same address. Finally, the PSP notes that, under 2 Pa.C.S. § 505, the technical rules of evidence do not apply to administrative agency hearings.

Appellee responds that the Commonwealth Court majority correctly found that the PSP presented no competent evidence that he and the victim were cohabitating within the meaning of the Federal Gun Control Act. According to appellee, the competent evidence presented at the hearing established that he and the victim lived at different addresses during the few months that they dated. Although the victim's address was stated to be the same as his in the police report, appellee argues that the recording police officer must have made an incorrect assumption when completing the report. Appellee asserts that the statement in the police report that the victim was his "live in girlfriend" is inadmissible under 42 Pa.C.S. § 6104(b) because the PSP did not affirmatively establish who, if anyone, provided that piece of information. Appellee notes that the PSP did not attempt to introduce any other trustworthy evidence showing his alleged cohabitation with the victim. Appellee argues that the Commonwealth Court majority employed the same analysis that the PSP now asks this Court to utilize, but the PSP simply disagrees with the result below. Appellee concedes that the Commonwealth Court may not have cited to 2 Pa.C.S. § 505, but it correctly followed its mandate to determine whether the "live in girlfriend" statement in the police report was of probative value, finding that the statement lacked probative value since its source was unknown. Finally, appellee argues that the AALJ erred in applying the legal standard for a domestic relationship set

forth in 23 Pa.C.S. § 6102 because only federal law is relevant to the instant case.

On appellate review, we will affirm the decision of an administrative agency unless constitutional rights were violated, an error of law was committed, the procedure before the agency was contrary to statute, or any finding of fact made by the agency and necessary to support its adjudication is unsupported by substantial evidence. 2 Pa.C.S. § 704; see also *Pa. Game Comm'n v. State Civil Serv. Comm'n (Toth)*, 561 Pa. 19, 747 A.2d 887, 891 (2000). Typically, questions concerning the admission or exclusion of evidence in an administrative proceeding are within the discretion of the tribunal conducting the hearing and are not to be disturbed on appeal absent a finding of abuse of discretion. *Gibson v. Workers' Compensation Appeal Board (Armco Stainless & Alloy Products)*, 580 Pa. 470, 861 A.2d 938, 947 (2004).

Preliminarily, we address the interplay of evidentiary rulings and sufficiency review. The case is presented as one involving evidentiary sufficiency, but, as our summary of the Commonwealth Court's analysis reveals, that sufficiency review ultimately was controlled by a determination on the admissibility of evidence in the police report. It is important to maintain the distinction between sufficiency review and rulings on evidence. When reviewing the sufficiency of the evidence, this Court must determine whether the evidence at trial, and all reasonable inferences derived therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support the verdict. *Lehigh County Vo–Tech School v. Workmen's Compensation Appeal Bd. (Wolfe)*, 539 Pa. 322, 652 A.2d 797, 800 (1995). A sufficiency claim will not be reviewed on a diminished record, "but rather on the evidence actually presented to the finder of fact rendering the questioned verdict." *Commonwealth v. Lovette*, 498 Pa. 665, 450 A.2d 975, 977 (1982); *accord Commonwealth v. Hall*, 574 Pa. 233, 830 A.2d 537, 542 n. 2 (2003). If some of the evidence relied upon to render the verdict was inadmissible, the appropriate remedy is remand for a new hearing without the

prohibited evidence. *Commonwealth v. Conklin*, 587 Pa. 140, 897 A.2d 1168, 1175 n. 12 (2006); *see also Lovette*, 450 A.2d at 981. Only a successful sufficiency challenge considering the full record at trial may lead to the outright grant of relief. *Conklin*, 897 A.2d at 1175 n. 12.

██  Under the Federal Gun Control Act, it is unlawful for any individual "who has been convicted in any court of a misdemeanor crime of domestic violence" to "possess in or affecting commerce, any firearm or ammunition." 18 U.S.C. § 922(g)(9).[3] The Federal Gun Control Act defines the term "misdemeanor crime of domestic violence," in relevant part, as an offense that:

(i) is a misdemeanor under Federal, State, or Tribal law; and

(ii) has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabitating with or has cohabitated with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim

18 U.S.C. § 921(a)(33)(A).[4] The parties do not dispute that appellee's simple assault conviction qualifies as a misdemeanor crime under Pennsylvania law; instead, the controversy is

3. This provision was added to the Federal Gun Control Act in 1996. *United States v. Denis*, 297 F.3d 25, 27 (1st Cir.2002). Although appellee's simple assault conviction preceded the amendment, applying 18 U.S.C. § 922(g)(9) to misdemeanor convictions preceding its effective date does not violate the *Ex Post Facto* Clause. *See Lehman v. Pa. State Police*, 576 Pa. 365, 839 A.2d 265, 273–74 (2003).

4. Under the Protection from Abuse Act, Pennsylvania defines "[f]amily or household members" more broadly than domestic relationships are defined in the Federal Gun Control Act: "Spouses or persons who have been spouses, persons living as spouses or who lived as spouses, parents and children, other persons related by consanguinity or affinity, *current or former sexual or intimate partners* or persons who share biological parenthood." 23 Pa.C.S. § 6102 (emphasis added). The AALJ utilized this statute in rendering its decision, but the PSP does not argue to this Court that it is proper to apply the Pennsylvania statute to the instant matter. Thus, we do not pass upon the question.

limited to whether appellee and the victim cohabitated or were cohabitating prior to the assault.[5]

■ Pennsylvania law does not separately classify simple assault convictions based on the identity of the defendant's victim or include a relationship element in the statute.[6] Thus, determining the nature of the victim's relationship with appellee required the AALJ to make a finding unaddressed by the guilty plea in appellee's criminal case.[7] The only evidence introduced by the PSP at the administrative hearing relevant to that finding was the police report concerning appellee's simple assault conviction. The PSP and appellee disagree whether the police report detailing the simple assault commit-

5. Although the PSP states in its brief that the victim was similarly situated to appellee as a spouse and apparently argued the same before the Commonwealth Court, it merely argues in its brief to this Court that cohabitation proves that the victim was similarly situated to appellee as a spouse. Therefore, the PSP's argument under the penultimate clause of Section 921(a)(33)(A)(ii) is indistinguishable from any argument forwarded under the final clause of the provision.

6. There is some disagreement among the federal courts as to whether 18 U.S.C. § 921(a)(33)(A) requires the predicate offense to contain a domestic relationship element to be classified as a misdemeanor crime of domestic violence. *See United States v. Heckenliable*, 446 F.3d 1048 (10th Cir.2006) (domestic relationship element unnecessary); *United States v. Belless*, 338 F.3d 1063 (9th Cir.2003) (same); *United States v. Shelton*, 325 F.3d 553 (5th Cir.2003) (same), *United States v. Barnes*, 295 F.3d 1354 (D.C.Cir.2002) (same), *United States v. Kavoukian*, 315 F.3d 139 (2d Cir.2002) (same); *United States v. Smith*, 171 F.3d 617 (8th Cir.1999) (same).
But *see United States v. Hayes*, 482 F.3d 749 (C.A.4 (W.Va.) 2007) (domestic relationship element necessary). While we recognize that most federal courts reaching this issue have found that a domestic relationship element is unnecessary for a crime to be classified as a misdemeanor crime of domestic violence under Section 921(a)(33)(A), no such issue has been raised by the parties here, who assume that such an element is not required.

7. We note that, since the gun restrictions imposed by Section 922(g) of the Federal Gun Control Act are not punitive in purpose or effect, *Lehman*, 839 A.2d at 273, the procedure utilized in this case does not raise due process concerns of the type present in *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 2363, 147 L.Ed.2d 435 (2000) (holding that: (1) it is unconstitutional for a state to remove from a jury's assessment the facts, other than the fact of a prior conviction, that increase a defendant's punishment; and (2) such facts must be found by proof beyond a reasonable doubt).

ted by appellee was admissible before the AALJ, either under the statutory official records exception or under the relaxed evidentiary standards applicable to administrative proceedings. While this matter is ultimately resolved under a statute, not under the Rules of Evidence, the applicable statute obviously addresses an evidentiary matter. Therefore, we find the historical level of deference provided to administrative agencies' evidentiary determinations regarding the admission of hearsay sufficiently analogous to guide us in applying the appropriate level of review in this case. " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Pa.R.E. 801(c). Hearsay evidence is normally inadmissible at trial unless an exception provided by the Pennsylvania Rules of Evidence, this Court's jurisprudence, or statute is applicable. Pa.R.E. 802. Complicating this general rule in the administrative law context, however, is Section 505 of the Administrative Agency Law: "Commonwealth agencies shall not be bound by technical rules of evidence at agency hearings, and all relevant evidence of reasonably probative value may be received. Reasonable examination and cross-examination shall be permitted." 2 Pa.C.S. § 505. Therefore, hearsay evidence may generally be received and considered during an administrative proceeding. See *A.Y. v. Commonwealth, Dep't of Pub. Welfare, Allegheny County Children & Youth Serv.*, 537 Pa. 116, 641 A.2d 1148, 1150 (1994).

■ The Commonwealth Court, however, has previously ruled that a decision of an administrative agency regarding a license to carry a firearm which relies solely on hearsay cannot stand. *Goodman v. Commonwealth*, 98 Pa.Cmwlth. 371, 511 A.2d 274, 277 (Pa.Cmwlth.1986). Similarly, this Court has stated that an individual should not be faced with sacrificing " 'inherent and indefeasible rights' " for the sake of prosecutorial convenience in the administrative setting. *A.Y.*, 641 A.2d at 1150. In *A.Y.*, an individual sought removal of her name from the Statewide Child Line and Abuse Registry as a suspected child abuser following an administrative determination based solely on hearsay evidence. Noting the common

evidentiary problems accompanying child abuse cases and the serious consequences for an individual labeled as a suspected child abuser, this Court adopted the evidentiary guidelines in Rule 807 of the Uniform Rules of Evidence for use in administrative proceedings in suspected child abuse cases, guidelines which are similar to the standard later adopted at 42 Pa.C.S. § 5985.1 by the General Assembly for use in criminal proceedings involving child abuse. *Id.* at 1152. The present matter involves appellee's right to bear arms, which implicates the Second Amendment of the United States Constitution, U.S. CONST. amend. I1. ("A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."). It has been the practice of Pennsylvania courts to afford heightened evidentiary protection of "inherent and indefeasible rights" in administrative proceedings. For the purposes of this opinion, we assume such a right is implicated, and thus, we will evaluate a denial of a license to carry a firearm according to the standard hearsay rules governing more formal judicial proceedings.

Although the Pennsylvania Rules of Evidence do not contain a rule corresponding to the federal public records exception to the hearsay rule found at F.R.E. 803(8),[8] an equivalent rule is embodied by statutes regarding the authentication and admissibility of official records. Section 6103(A) of the Judicial Code governs the authentication of official records:

(a) **General rule.**—An official record kept within this Commonwealth by any court, magisterial district judge or other government unit, or an entry therein, when admissible for

---

8. Federal Rule of Evidence 803(8) provides:

**Public records and reports.** Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, or (C) in civil actions and proceedings and against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

any purpose, may be evidenced by an official publication thereof or by a copy attested by the officer having the legal custody of the record, or by that officer's deputy, and accompanied by a certificate that the officer has the custody. The certificate may be made by any public officer having a seal of office and having official duties with respect to the government unit in which the record is kept, authenticated by the seal of that office, or if there is no such officer[.]

42 Pa.C.S. § 6103. The parties have no disagreement with the Commonwealth Court's finding below that the police report was properly authenticated, but rather the parties quarrel over whether the report meets the standards set forth in Section 6104 of the Judicial Code, which details the requirements for the admissibility of public records:

(a) **General rule.**—A copy of a record of governmental action or inaction authenticated as provided in section 6103 (relating to proof of official records) shall be admissible as evidence that the governmental action or inaction disclosed therein was in fact taken or omitted.

(b) **Existence of facts.**—A copy of a record authenticated as provided in section 6103 disclosing the existence or nonexistence of facts which have been recorded pursuant to an official duty or would have been so recorded had the facts existed shall be admissible as evidence of the existence or nonexistence of such facts, unless the sources of information or other circumstances indicate lack of trustworthiness.

42 Pa.C.S. § 6104; *see also Commonwealth v. May,* 587 Pa. 184, 898 A.2d 559, 565 n. 12 (2006) (Opinion Announcing Judgment of the Court) (police reports are exempt from hearsay disqualification under 42 Pa.C.S. § 6104). Subsection (b) is limited to "facts" and does not purport to permit the introduction of opinions or diagnoses. Pa.R.E. 803(8) cmt.; *but cf. Beech Aircraft Corp. v. Rainey,* 488 U.S. 153, 170, 109 S.Ct. 439, 450, 102 L.Ed.2d 445 (1988) (records admissible under F.R.E. 803(8)(C) "are not inadmissible merely because they state a conclusion or opinion").

There are several explanations for the development of the official records exception to the hearsay rule. One practical concern often cited for explaining its development is the inconvenience of requiring public officials to appear and testify regarding the information found in their reports. 2 JOHN W. STRONG ET AL., MCCORMICK ON EVIDENCE 272 (5th ed.1999); LEONARD PACKEL & ANNE BOWEN POULIN, PENNSYLVANIA EVIDENCE § 803(8)–1 (3d ed.2007). Additionally, considering the volume of records public officials typically are responsible for, a written record usually is more reliable than the official's memory. JOHN W. STRONG ET AL., MCCORMICK ON EVIDENCE at 272. Official records are also likely to be trustworthy given "the official duty imposed on those preparing the records." LEONARD PACKEL & ANNE BOWEN POULIN, PENNSYLVANIA EVIDENCE, at § 803(8)–1. Moreover, official records "have qualities of trustworthiness similar to records of regularly conducted activity." *Id.*

Under Section 6104(b) of the Judicial Code, facts recorded in police reports are admissible, as they were recorded pursuant to an official duty, unless they are untrustworthy. The parties' debate here centers on the trustworthiness of the "live in girlfriend" statement in the police report concerning appellee's simple assault. The Commonwealth Court panel majority declared the "live in girlfriend" statement untrustworthy and inadmissible under Section 6104, apparently as a matter of law, because there was no indication that such information would have been "recorded pursuant to an official duty." The majority ultimately determined that, without the statement, the PSP had failed to establish that appellee and the victim shared a relationship defined in Section 921(a)(33)(a)(ii) of the Federal Gun Control Act. *D'Alessandro,* 878 A.2d at 141–42. There are several deficiencies in the Commonwealth Court's reasoning and conclusion.

First, the "live in girlfriend" statement was unnecessary for a tribunal to conclude that appellee and the victim had a qualifying relationship under Section 921(a)(33)(a)(ii). Because Section 922(g)(9) of the Federal Gun Control Act is non-

punitive, *see Lehman v. Pa. State Police,* 839 A.2d at 273, and this case involves a civil proceeding, the AALJ's finding needed only to rest on proof by a preponderance of the evidence. *Minnich v. Rivera,* 509 Pa. 588, 506 A.2d 879, 880 (1986). The Commonwealth Court majority curiously discounted the fact that the same address was recorded for both the victim and appellee in the police report, as well as appellee's own testimony that he had a sexual relationship with the victim. It is true, as the panel majority stated, that proof that appellee and the victim lived at the same address alone is insufficient to prove a relationship fitting within Section 921(a)(33)(A)(ii). Yet, the majority does not explain why the addresses listed in the police report, considered in conjunction with appellee's admission of having a sexual relationship with the victim, would be insufficient to support a finding that appellee cohabitated with the victim as someone similar to a spouse. A logical and permissible inference arising from these two pieces of evidence is that appellee and the victim indeed had a domestic relationship under Section 921(a)(33)(A)(ii).

Moreover, we conclude that the "live in girlfriend" statement in fact was admissible. Section 6104(b) of the Judicial Code instructs courts only to declare inadmissible those records created under circumstances or sources that *"indicate"* a lack of trustworthiness, codifying the historical presumption that official records will normally be trustworthy. 42 Pa.C.S. § 6104(b) (emphasis added). The police report in the case *sub judice* contained no obvious errors, nor was there any indication that the information that the victim lived with appellee originated from an unreliable source. Simply because the source of the information is unknown does not necessarily render the statement unreliable, particularly in light of the fact here that it is logical to assume that it was confirmed by appellee or the victim, or observed by the investigating police officer upon viewing personal items in the home. Appellee and the victim had no apparent contemporaneous reason to lie about whether they were living together as boyfriend and girlfriend. Also, contrary to the Common-

wealth Court majority, it is not at all unreasonable to assume that the investigating police officer would need to probe the relationship of the parties, and their addresses, in order to collect information for charging decisions, for providing notice, etc. Of course, it is possible that the police officer made an assumption about appellee's relationship with the victim and it is possible he made assumptions about the parties' addresses. But there is no proof of that, nor is there reason to believe that the police officer did so given the information that the officer was required to collect in order to conduct a thorough investigation.[9] Lastly, there is no concern that the police officer might have purposefully misrepresented things to bolster a firearms licensing case against appellee because, at the time of the incident in 1989, appellee did not face any greater criminal punishment or sanction for assaulting a girlfriend with whom he lived.[10]

Finally, we stress the difficulty in the Commonwealth Court majority conflating evidentiary review with sufficiency review. Here, we hold that the disputed evidence was admissible and, with it, it appears there was substantial evidence to support disentitlement to a firearms carrying license. There remains, however, the complication that the AALJ applied Pennsylva-

**9.** The dissent quotes a portion of the police report which may give the impression that the victim was in no position to aid in the investigation. We note that the victim was fully conscious and capable of communicating with the responding police officers. The police report stated in full that:

Received a call from radio to go to above address for a domestic [dispute], woman unconscious. Upon arrival, [appellee] meet [sic] us at the door and stated that he had called the medics because he hit the victim, his live in girlfriend, knocking her to the floor, and that she was unconscious. **Officers proceeded to the second floor and found the victim standing in a hall.** Victim had large lumps and bruises on the left side of her face and red marks around her throat. **She was very unsteady and stated that she was having problems breathing. Victim told Officer Jones that the [appellee] hit her and knocked her to the floor.** Medic 5102 transported victim to the Hospital.
Police Report of 12/10/89.

**10.** We note that while the PSP briefly addresses the underlying duality of the "live-in girlfriend" hearsay statement in the police report, appellee fails to forward a double hearsay argument before this Court. We have no quarrel with the Concurring Opinion's analysis of double hearsay, as it provides further support for our disposition.

nia law, rather than federal law, in determining what is required to prove a domestic relationship. It is not clear to us whether any distinct challenge to that determination has been properly presented, and what the consequences of such a challenge would be. We therefore remand the case to the Commonwealth Court for proceedings consistent with the Opinion, offering no view on the reviewability, or merits of any remaining issue.

Reversed and remanded.

Former Justice NEWMAN did not participate in the decision of this case.

Justice EAKIN and BAER join the opinion.

Justice SAYLOR files a concurring opinion.

Justice CAPPY files a dissenting opinion in which Justice BALDWIN joins.

Justice SAYLOR, concur.

While I agree with the majority that we should evaluate this license denial under the hearsay rules applicable in judicial proceedings,[1] I would credit Appellee's argument that the police report at issue contains double hearsay.

Before the administrative law judge, Appellee objected to the admission of the narrative portion of the police report, which included the characterization that the victim was Appellee's "live-in girlfriend," as well as the report's reference to

1. If this case did not involve a potential infringement of Appellee's Second Amendment rights, *see* Majority Opinion, *op.* at 513, 937 A.2d at 412, we would have been presented with an interesting question in determining whether, and to what degree, hearsay rules should apply. As the majority notes, under governing statutory law, administrative agencies are not generally bound by the technical rules of evidence. *See* 2 Pa.C.S. § 505. However, the statutory public records exception to the hearsay rule is expressly applicable to agency proceedings. *See* 42 Pa.C.S. § 6104(b). Additionally, courts have limited the ability of agencies to rely on properly objected-to hearsay evidence in their adjudications. *See, e.g., Rox Coal Co. v. WCAB (Snizaski),* 570 Pa. 60, 75–76, 807 A.2d 906, 915 (2002) (citing *Walker v. UCBR,* 27 Pa.Cmwlth. 522, 367 A.2d 366 (1976)).

the victim's address, on the basis they constituted "internal hearsay" within the report because the State Police did not establish their source. N.T. at 23, 28–30. Appellee maintains that the "live-in girlfriend" and address references are at minimum untrustworthy for purposes of the public records hearsay exception, because the State Police have not demonstrated the source of the information. The majority ultimately holds that both the address and the statement are admissible because there is nothing in the police report to " *'indicate'* a lack of trustworthiness" under the public records exception. Majority Opinion, Op. at 516, 937 A.2d at 414 (emphasis in original). Although the majority does not respond directly to Appellee's double hearsay contentions, the majority states that "[s]imply because the source of information is unknown does not necessarily render the statement unreliable. . . ." *Id.*

I agree with the Commonwealth Court majority, however, that "[m]erely because a police report is admitted into evidence does not make admissible every statement contained therein." *D'Alessandro v. Pa. State Police*, 878 A.2d 133 (Pa.Cmwlth.2005). If the police report, itself an extrajudicial statement, contains another out-of-court statement by a declarant other than the author, it is double hearsay. *See Commonwealth v. Laich*, 566 Pa. 19, 25, 777 A.2d 1057, 1060 (2001). For example, in *Commonwealth v. May*, 587 Pa. 184, 898 A.2d 559 (2006) (Opinion Announcing the Judgment of the Court), a police officer's investigative report was admissible under an exception to the hearsay rule, but the lead opinion noted that admission of a document "does not automatically render the statements included therein admissible." *Id.* at 195, 898 A.2d at 565.[2] Rather, when a report contains the out-of-court statements of individuals, those statements constitute "double hearsay" and are admissible only if there is a separate hearsay exception to support the admission of each one. *Id.; see also* 2 K. BROUN, MCCORMICK ON EVIDENCE § 324.1 (6th ed.2006) (explaining that police reports admissible

2. Although *May* is a three-Justice plurality, in my concurrence I agreed with the majority approach of requiring an exception at each level of a declaration containing double hearsay to support admissibility. *See May*, 587 Pa. at 229–31, 898 A.2d at 586–87 (Saylor, J., concurring).

under the public records exception often contain multiple levels of hearsay, and that statements of individuals made to the officer must qualify under other hearsay exceptions or be excluded). See *generally* Pa.R.E. 805 (relating to "hearsay within hearsay" and requiring each level of hearsay to come within some exception to the hearsay rule in order to be admissible).

The majority appears to conclude that the State Police was not required to explain the source of the "live-in girlfriend" statement or the victim's address. As the proponent of the evidence, however, it was the State Police's obligation to lay a sufficient foundation for the police report, upon Appellee's timely objection. See MCCORMICK ON EVIDENCE § 51. Thus, to support its admission, the State Police would be required to identify the source of all relevant information contained therein.

Presently, the State Police argue that, when the "live-in girlfriend" statement is read in context, it most likely represents a direct quote from Appellee. *See* Brief for Appellant at 11. Thus, to the degree that the statement represents double hearsay, the State Police maintain that it was nevertheless admissible, at the first level under the public records exception, and at the second level, as an admission of a party opponent. *See* Pa.R.E. 803(25).

I agree with this position. The pertinent passage from the police report proceeds as follows: "Upon arrival, Actor meet [sic] us at the door and stated that he had called the medics because he hit the victim, his live in girlfriend, knocking her to the floor, and that she was unconscious." R.R. at 69a (emphasis added). In my view, this notation sufficiently reflects the reporting officer's attestation that Appellee told the officer that the victim was his live-in girlfriend. Thus, although I believe that Appellee is correct that the police report contains double hearsay, I conclude that the essential information concerning the victim's residence with him was admissible into evidence, in light of the applicability of an exception to the rule against hearsay pertaining as to each hearsay aspect.

Chief Justice CAPPY, dissent.

I respectfully dissent as I do not agree that the police officer's report indicating that Appellee had hit "his live-in girlfriend" was a "fact" within the public record exception to the hearsay rule provided by the Judicial Code, 42 Pa.C.S. § 6101 *et seq.* Additionally, as the majority notes, the Pennsylvania Rules of Evidence do not incorporate a "public records" exception to the hearsay rule.[1] Therefore, the only "public records" exception is that contained in Sections 6103 and 6104 of the Judicial Code.

Section 6104(b) states that evidence shall be admissible when "a copy of a record authenticated as provided in section 6103 disclosing the existence or nonexistence of facts which have been recorded pursuant to an official duty or would have been so recorded had the facts existed shall be admissible as evidence of the existence or nonexistence of such facts, unless the sources of information or other circumstances indicate lack of trustworthiness." The plain language of Section 6104(b) makes clear that the section applies only to the "existence of facts." 42 Pa.C.S. § 6104(b). Indeed, the Comment to Pa. R.E. 803(8), which explains that Pennsylvania has not adopted the federal public records analog, states that the exception to the hearsay rule for public records is contained in Section 6104. It then states unequivocally that "[Section 6104] is limited to 'facts.' It does not include opinions or diagnosis."

A "fact" is defined as a "thing that is known to have occurred, to exist, or to be true." *Oxford American Dictionary and Language Guide,* 344 (ed.1999). Therefore, in this case, the question is simply whether the reporting officer **knew** that the victim was Appellee's "live-in girlfriend" at the time he made the report. I can only conclude that he did not.

1. For this reason, I also distance myself from the Majority's discussion of the applicability of the rules of evidence in the administrative agency setting. See Majority Opinion at 513–14, 937 A.2d at 412–13. I agree with the Commonwealth Court's observation that in this case, the court is not confronted with a question involving the applicability of the rules of evidence, but a question of the applicability of a statute defining public records. *D'Alessandro,* 878 A.2d 133, 140 n. 2 (Pa.Cmwlth.

The relevant portion of the police report states that "Actor met us at the door and stated that he had called the medics because he hit the victim, his live-in girlfriend, knocking her to the floor, and that she was unconscious." *See* Record at Appendix I.

The officer may have **speculated** that the girlfriend was a "live-in" based upon the scene when he arrived. Furthermore, the officer may have even **inferred** this conclusion by the fact that the victim's and Appellee's addresses were the same. Nevertheless, speculation and inference do not amount to "fact." Presumably, the police officer formed an opinion that the victim was Appellee's "live-in girlfriend." Opinion, however, also does not equal fact. *See* Comment to Pa.R.E. 803(8). Indeed, as noted by the court below the mere duplication of addresses does not justify a conclusion regarding any sexual relationship between the parties, much less one of cohabitation. *See D'Alessandro*, 878 A.2d at 141.

In my mind, this court should look no further than the conclusion of the Commonwealth Court,

> Merely because a police report is admitted into evidence does not make admissible every statement contained therein. Rather, only those facts recorded pursuant to the official duty involved at that time and only those which indicate a trustworthy source of the facts recalled are admissible. Because it is not clear that it was an official duty of the police officer investigating the assault to make the factual determination of whether or not Petitioner and the victim cohabitated, we must conclude that the facts in the Police Report are not admissible under 42 Pa.C.S. § 6104(b) for the purpose of attempting to establish whether or not Petitioner and the victim cohabitated.

*Id.* at 141–142.

For these reasons, I respectfully dissent.

Justice BALDWIN joins this dissenting opinion.

2005). Accordingly, it is clear that Sections 6103 and 6104 apply to this case.