IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Momma D's Day Care Center, LLC,   :
             Petitioner   :
                           :
           v.            :
                           :
Department of Public Welfare,     :   No. 2009 C.D. 2014
           Respondent   :   Submitted: May 1, 2015


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
            HONORABLE ROBERT SIMPSON, Judge
            HONORABLE ANNE E. COVEY, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                   FILED: September 23, 2015


      Momma D's Day Care Center, LLC (Momma D's) petitions this Court for review of the Department of Public Welfare (DPW),[1] Bureau of Hearings and Appeals' (BHA) October 8, 2014 order adopting the DPW Administrative Law Judge's (ALJ) recommendation revoking Momma D's Certificate of Compliance (Certificate) to operate a daycare center due to Public Welfare Code (Code)[2] violations. Essentially, the issues for review are: (1) whether the ALJ erred by failing to consider Momma D's brief; (2) whether DPW failed to follow the Code and violated Momma D's due process rights; (3) whether the ALJ violated Momma D's constitutional rights by recommending revocation when DPW could not determine whether a correction plan was required; and, (4) whether the ALJ erred and violated

---

[1] Effective November 24, 2014, DPW was officially renamed the Department of Human Services. *See* Act of June 13, 1967, P.L. 31, added by Section 2 of the Act of September 24, 2014, P.L. 2458, 62 P.S. § 103(a) (effective November 24, 2014). However, because this appeal was filed prior to the official name change, we will refer to Respondent as DPW herein.

[2] Act of June 13, 1967, P.L. 31, *as amended*, 62 P.S. §§ 101-1503.

Momma D's constitutional due process rights by relying upon hearsay evidence. Upon review, we affirm.

Momma D's is a child care center operated subject to DPW's Certificate at 1 Knob Road, Mount Pocono, Pennsylvania by Dorine Pinkney (Pinkney). By July 25, 2013 letter, DPW's Office of Child Development and Early Learning (OCDEL)[3] notified Momma D's that DPW had preliminarily decided to revoke its Certificate based on Momma D's failure to comply with DPW's regulations; failure to comply with acceptable plans to correct non-compliance items; and gross incompetence, negligence or misconduct in operating the facility. The letter advised as follows:

> On July 3, 2013, a representative from [DPW] conducted a complaint inspection at your facility. Our representative observed twelve children in care in the preschool room and the preschool room had a maximum capacity of ten children. As a result, our representative verified violation of 55 Pa. Code . . . §[]3270.61(h), relating to measurement and use of indoor child care space (Attachment A-1).
>
> In addition, you have been repeatedly cited for the following violations, demonstrating failure to comply with the acceptable plans to correct non[-]compliance. As exhibited by the complaint inspection on June 22, 2013 (Attachment A-2), the complaint inspection on June 13, 2013 (Attachment A-3), and the complaint inspection on May 28, 2013 (Attachment A-4) you were found in violation of the following:
>
> •[Section] 3270.52 [of DPW's Regulations], relating to staff: child ratio mixed age level (cited 6/22/13 Attachment A-2 and 5/28/13 Attachment A-4);
>
> • [Section] 3270.54(a) [of DPW's Regulations], relating to minimum number of facility persons in the child care facility (cited 6/22/13 Attachment A-2 and 5/28/13 Attachment A-4); and

---

[3] OCDEL is jointly overseen by DPW and Pennsylvania's Department of Education. *See* Reproduced Record (R.R.) at 252a.

2

• [Sections] 3270.113(a) and (a)(1), [] 3270.113(c), and [] 3270.113(e) [of DPW's Regulations], relating to supervision of children (cited 6/13/13 Attachment A-3 and 5/28/13 Attachment A-4).

As a result of the inspection conducted on May 28, 2013, you submitted acceptable plans to correct the violations cited and [DPW] accepted your plans of correction (Attachment A-4). You failed, however, to comply with these acceptable plans of correction, as verified by the inspections conducted on June 22, 2013 (Attachment A-2) and June 13, 2013 (Attachment A-3).

Your non-compliance with [DPW's] regulations for child care centers and failure to comply with acceptable plans of correction constitutes gross incompetence, negligence, and misconduct in operating a facility.

Reproduced Record (R.R.) at 252a-253a.

Momma D's timely appealed the preliminary revocation and an ALJ hearing was held on July 17, 2014, at which Pinkney testified for Momma D's and OCDEL certification representative Michael Gatto (Gatto) testified for DPW. By August 4, 2014 letter, BHA gave the parties the opportunity to file briefs on or before September 5, 2014. BHA received DPW's brief on September 5, 2014. Although postmarked September 5, 2014, BHA did not receive Momma D's brief until September 8, 2014. Thereafter, the ALJ recommended that DPW deny Momma D's appeal. By October 8, 2014 order, BHA adopted the ALJ's recommendation and denied Momma D's appeal. Momma D appealed to this Court.[4]

Momma D's argues that the ALJ erred by failing to consider its post-hearing brief. Specifically, Momma D's contends that its timeliness in filing its brief should have been determined by the United States (U.S.) Postal Service postmark, and BHA's failure to do so requires remand for the ALJ's consideration. We

---

[4] "Our review in an appeal of an adjudication of DPW is limited to determining whether constitutional rights were violated, an error of law was committed or whether necessary findings of fact were supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704[.]" *KC Equities v. Dep't of Pub. Welfare*, 95 A.3d 918, 925 n.5 (Pa. Cmwlth. 2014).

3

disagree. The General Rules of Practice and Procedure (GRAPP) "apply when agencies hold a hearing, unless the agency adopted alternate procedures." *KC Equities v. Dep't of Pub. Welfare*, 95 A.3d 918, 932 (Pa. Cmwlth. 2014). Section 31.11 of the GRAPP applicable in these types of cases, specifies that "documents . . . shall be received for filing at the office of the agency within the time limits . . . for the filing. The date of **receipt at the office of the agency** and not the date of deposit in the mails is determinative." 1 Pa. Code § 31.11 (emphasis added). Here, BHA's Standing Practice Order (SPO)[5] also provides, in pertinent part:

> **RULE 11: Filing, Service and Proof of Service**
>
> (a) A document **will not be considered** by [BHA] for its intended purpose **unless it is filed at the office of BHA on or before the day it is due**.
>
> . . . .
>
> (c) **A party who submits a document to [BHA] by mail is responsible to do so far enough in advance of the day so that the document is received before the due date.**

SPO Rule 11 (emphasis added).[6] Both GRAPP and DPW's SPO require that briefs must be received **at BHA's office** on or before the day they are due or they will not be considered. 1 Pa. Code § 31.11 and SPO Rule 11(a).

The parties do not dispute that their post-hearing briefs were due to BHA on or before September 5, 2014, that Momma D's brief was postmarked September 5, 2014 and that BHA received it September 8, 2014. Because Momma D's brief was

---

[5] According to BHA SPO Rule 3, the SPO "shall supplement hearing procedures specified at 1 Pa. Code Chapters 31 [General Rules of Administrative Practice and Procedure (GRAPP) – Preliminary Provisions], 33 [GRAPP – Documentary Filings], 35 [GRAPP – Formal Proceedings] and which involve formal proceedings." *Id.*

At the hearing, the ALJ stated that the scheduling order instructed the parties to follow the SPO. *See* R.R. at 10a. The scheduling order was not included with this record.

[6] *See* http://www.dpw.state.pa.us/cs/groups/webcontent/documents/form/s_002109.pdf.

not "at [BHA's] office" until September 8, 2014, it was not mailed "far enough in advance of the day so that the document is received before the due date," thus, it was not timely filed and BHA was not authorized to consider it. 1 Pa. Code § 31.11 and SPO Rule 11(a), (c).

Citing *Gannett Satellite Information Network, Inc. v. Unemployment Compensation Board of Review*, 661 A.2d 502 (Pa. Cmwlth. 1995) and *C.E. v. Department of Public Welfare*, 97 A.3d 828 (Pa. Cmwlth. 2014), Momma D's claims that because the timeliness of unemployment compensation appeals and appeals from indicated reports of child abuse are calculated based upon postmark dates, the timeliness of Momma D's brief filing must be similarly calculated. However, *Gannett Satellite* and *C.E.* are inapposite. Unlike in the instant case, Section 101.82(b)(1) of the Department of Labor and Industry's Regulations expressly provides that appeal filing dates are to be determined, *inter alia*, by the official U.S. Postal Service postmark on the envelope. 34 Pa. Code § 101.82(b)(1)(i). Further, DPW's regulations governing indicated report amendment and expungement requests reflects that they "shall be . . . postmarked within 45-calendar days of the mailing date of the letter," 55 Pa. Code § 3490.105a(a), and denial appeals "shall . . . be postmarked within 45-calendar days of the date" of DPW's denial. 55 Pa. Code § 3490.106(b). Since Section 31.11 of the GRAPP and SPO Rule 11 do not make U.S. Postal Service postmark sufficient to demonstrate timeliness, but rather receipt of the document at BHA's office, the ALJ did not err by refusing to consider Momma D's post-hearing brief.[7]

---

[7] Further supporting our holding is that Momma D's timely appealed from OCDEL's July 25, 2013 letter which similarly specified that "an appeal [therefrom] *must be received at the* [*OCDEL*] *address* within **thirty (30) days** of the **mailing date** of this letter." R.R. at 253a (italics emphasis added). Thus, Momma D's was on notice months before the post-hearing brief was due that U.S. Postal Service postmarks do not apply in this type of case.

Momma D's next contends that DPW failed to follow the Code and, therefore, violated Momma D's due process rights. Momma D's specifically avers that based on Gatto's admission that he followed a procedure that is separate and distinct from the Code, Momma D's was "tried and, essentially convicted, based upon an 'internal procedure'" about which it was not on notice and from which it could not assert a proper defense. Momma D's Br. at 11. We disagree.

> Indeed, the law is well-settled that
>
> government is prohibited from depriving individuals of life, liberty, or property, unless it provides the process that is due. While not capable of an exact definition, the basic elements of procedural due process are adequate **notice**, the **opportunity to be heard**, and the **chance to defend** oneself before a fair and impartial tribunal having jurisdiction over the case.

*Commonwealth v. Turner,* 80 A.3d 754, 764 (Pa. 2013) (emphasis added). However, our review of the record reveals that Momma D's was provided with adequate notice advising it of DPW's determination to not renew its certificate of compliance, the conduct and regulations which formed the basis for this decision and its right to appeal. *See* R.R. at 252a-253a. At the hearing, where Momma D's was represented by legal counsel, the ALJ afforded Momma D's the opportunity to present evidence, cross-examine DPW's witnesses and argue its case. *See* R.R. at 1a-184a.

During the hearing, Gatto testified that he has worked for DPW since 1987, but has served in his current position since 1997. He explained that his duties included licensing, training and inspecting approximately 82 Pennsylvania daycare facilities, and investigating noncompliance complaints related to them.[8] He described that he

---

[8] Gatto estimated that he has conducted approximately 1,700 OCDEL investigations or inspections during the 17 years that he has held his current position. *See* R.R. at 119a-120a.

6

investigated the complaints and prepared the inspection summaries[9] that led to Momma D's 2014 Certificate revocation.

Gatto represented that although the law authorizes DPW to revoke a Certificate for a single violation, DPW does not typically do so. *See* R.R. at 119a-120a. He related that he uses DPW's procedure manual (Manual), "that is different [from] the [Code]." R.R. at 121a; *see also* R.R. at 120a. This statement is the sole basis upon which Momma D's avers that its due process rights were violated. Despite Momma D's opportunity to cross-examine Gatto, he was not asked to produce the Manual or expound on DPW's revocation procedure.[10] *See* R.R. at 121a. We cannot determine solely from Gatto's statement, as Momma D's would have us do, that the Manual holds Momma D's accountable to a standard different from the Code, as opposed to the alternate interpretation, that the Manual and the Code differ because they are physically separate documents.

Notwithstanding, the Manual was raised based on Gatto's representation that DPW does not typically revoke a compliance certificate based on a single violation. This came after significant questioning about whether and what actions Gatto recommended regarding Momma D's violations. He described that although he could and did recommend that DPW employ certain action plans, OCDEL's acting manager Katherine Holod (Holod) made the ultimate determinations. *See* R.R. at 82a, 91a-92a. Gatto stated that, based upon the May 2014 violation, his recommendation was to downgrade Momma D's Certificate and make it provisional but, after additional similar violations occurred within a few short weeks thereafter, he agreed that revocation was in

---

[9] According to Gatto, an inspection summary identifies the daycare's name, legal owner and location; the type of investigation conducted, violation descriptions and what DPW would require for correction; and, potentially, the owner's correction plan and date.

[10] Momma D's legal counsel merely asked Gatto if he had the Manual with him at the hearing, which he did not. *See* R.R. at 121a. Momma D's had the opportunity under GRAPP and Rule 22 of the SPO (relating to discovery) to request it.

order. *See* R.R. at 91a-92a. In this context, where there was more than a single Code violation, Gatto was not the ultimate decision-maker, and the Code sections relied upon for Momma D's revocation were specified in the July 25, 2014 letter. Thus, what action the Manual may have instructed Gatto to take for a single Code violation is immaterial.

Accordingly, Gatto's pronouncement that his investigations are guided by the Manual does not establish that DPW disregarded the Code or that DPW "tried and, essentially convicted [Momma D's] based upon an 'internal procedure'" about which it was not on notice and from which it could not assert a proper defense. Momma D's Br. at 11.

Momma D's next asserts that the ALJ violated its constitutional rights by recommending revocation when Gatto could not state whether correction plans were required for Momma D's violations. Specifically, it avers that the ALJ improperly relied upon correction plans that may not have been required. We disagree.

Initially, Section 20.71(a)(3) of DPW's Regulations, 55 Pa. Code § 20.71(a)(3), authorizes DPW to revoke a certificate due to a provider's "[f]ailure to submit an acceptable plan to correct noncompliance items." However, since Momma D's voluntarily submitted plans of correction for the relevant violations, and its revocation in this case was not based on its failure to <u>submit</u> acceptable plans, but rather its failure to <u>comply with</u> the accepted plans, Momma D's argument is meritless. *See* R.R. at 252a-253a.

Further, Momma D's claim notwithstanding, Gatto did not testify that he did not know if they were required. Gatto was asked:

> Q. With regards [sic] to a plan of correction, generally speaking, when you request a plan of correction from a provider, what is the purpose of that?
>
> A. Well, we have -- a plan of correction is – i[t] takes place when we have a violation and we give the operator an opportunity to provide a plan to correct that violation. And

in the case of these citations and inspection summary, a request -- requests for plans and corrections were made through the mail.

. . . .

Q. Would they need to provide a plan of correction in -- is that something that would be required in order to show you any kind of future compliance with their regulation?

A. Yes, a plan of correction would be needed to show how they would comply with correcting the noncompliance.

R.R. at 156a-157a. The testimony continued:

Q. Mr. Gatto, you testified in my initial cross[-]examination that a plan of correction is not required, did you not?

A. It is -- it is the – it's up to the provider. . . .

. . . .

A. . . . A plan of correction is needed if there's a noncompliance and the provider is going to provide us with an explanation as to how they're going to correct the noncompliance.

. . . .

A. If the provider chooses not to give a plan of correction, that's up to the provider.

Q. But you just testified . . . that a plan of correction is required to show compliance.

A. It is.

R.R. at 160a-161a. Further:

Q. You previously testified that a plan of corrective action is not required to be filed by Momma D's[,] correct?

A. A plan of correction is required when you have a -- a noncompliance, in order to present a plan on how you're going to correct that noncompliance.

9

Q. Okay. But you testified, and we had a number of objections, that if there was no corrective plan of action, you would just proceed without one.

A. We can't force the provider to provide a plan of correction. If the provider doesn't provide a plan of correction, then we would proceed without a plan of correction.

Q. So it's not required?

A. It's – it's required when we have a noncompliance, to -- for the provider to plan -- provide us a plan on how they're going to correct that noncompliance.

R.R. at 163a.

Although not the model of clarity, Gatto's explanation was hardly "bizarre and inconsistent" as Momma D's claims. Momma D's Br. at 15. He did clarify that in order for DPW to cite a provider for noncompliance, as it did in this case, a plan of correction must have been submitted and accepted.[11] Because there is no support for Momma D's claim that the ALJ improperly relied upon correction plans that may not have been required, the ALJ did not violate Momma D's constitutional rights.

Finally, Momma D's maintains that the ALJ erred and violated its constitutional due process rights by relying upon "precluded evidence" to support her recommendation. Momma D's Br. at 20. Specifically, Momma D's contends that the ALJ "ignored the consistent hearsay objections as to [] Gatto's testimony," and thereafter improperly reversed herself without notice to Momma D's. Momma D's Br. at 21. Although it is clear that the ALJ did not ignore Momma D's hearsay objections, we agree that Momma D's was not afforded the opportunity to rebut evidence previously ruled inadmissible.

---

[11] Gatto stated that if a plan of correction was not offered, DPW "would proceed without [it]." R.R. at 79a, 82a. Precisely how DPW would proceed would be Holod's decision. *See* R.R. at 82a; *see also* R.R. at 85a.

> Hearsay is defined as a 'statement, other than one made by the declarant while testifying at the trial or hearing offered in evidence to prove the truth of the matter asserted.' [Pennsylvania Rules of Evidence (]Pa.R.E.[)] 801(c). A 'statement' is defined in the [Pa.R.E.] as '(1) an oral or written assertion or (2) nonverbal conduct of a person if it is intended by the person as an assertion.' Pa.R.E. 801(a).

*Yost v. Unemployment Comp. Bd. of Review,* 42 A.3d 1158, 1163 (Pa. Cmwlth. 2012). Hearsay is generally inadmissible in any court proceeding.[12] *D'Alessandro v. Pa. State Police*, 937 A.2d 404 (Pa. 2007); *see also* Pa.R.E. 802. Section 505 of the Administrative Agency Law provides: "Commonwealth agencies shall not be bound by technical rules of evidence at agency hearings, and all relevant evidence of reasonably probative value may be received." 2 Pa.C.S. § 505. Based upon that rule, the Pennsylvania Supreme Court has held that "hearsay evidence may generally be received and considered during an administrative proceeding." *D'Alessandro*, 937 A.2d at 411-12. Notwithstanding, "it is well-settled that hearsay evidence, properly objected to, is not competent evidence to support a determination of an agency."[13] *Sule v. Phila. Parking Auth.*, 26 A.3d 1240, 1243 (Pa. Cmwlth. 2011). Moreover, an "[a]dmission by [a] party-opponent[]" is an exception to the hearsay rule when "[t]he statement is offered against a party and . . . was made by the party's . . . employee on a matter within the scope of that relationship and while it existed . . . ." Pa.R.E. 803(25).

---

[12] "'The rationale . . . is that hearsay is too untrustworthy to be considered by the trier of fact. Exceptions have been fashioned to accommodate certain classes of hearsay that are substantially more trustworthy than hearsay in general, and thus merit exception to the hearsay rule.'" *Commonwealth v. Charlton*, 902 A.2d 554, 559 (Pa. Super. 2006) (quoting *Commonwealth v. Bean,* 677 A.2d 842, 844 (Pa. Super. 1996)).

[13] "Hearsay evidence, admitted without objection, will be given its natural probative effect and may support a finding . . . [i]f it is corroborated by any competent evidence in the record . . . ." *Walker v. Unemployment Comp. Bd. of Review*, 367 A.2d 366, 370 (Pa. Cmwlth. 1976) (emphasis omitted).

In the instant case, on June 13, 2013, Gatto investigated a complaint that Pinkney mistreated a child on June 10, 2013.[14] He explained that he typically interviews staff during his investigations and gives them the option of providing verbal or written statements. In this case, Momma D's four employees opted to provide written statements regarding their observations of Pinkney's actions that day. *See* R.R. at 105a, 107a. Gatto declared that he cited Momma D's based on his interview of the child and four employees' handwritten statements. *See* R.R. at 52a, 278a-279a. Gatto testified that the employees were working at Momma D's when the incident occurred, and when he conducted his June 13, 2013 investigation. *See* R.R. at 62a. He stated that he discussed the matter with Pinkney after the citation was issued. He recalled that Momma D's did not challenge the citation for the June 11, 2013 incident, but rather submitted a correction plan which DPW accepted. *See* R.R. at 65a-66a, 89a, 104a; *see also* R.R. at 258a.

Momma D's lodged a hearsay objection to the admission of the employees' statements, and DPW responded. *See* R.R. at 126a. The ALJ sustained Momma D's objection. *See* R.R. at 126a. However, in her recommendation, the ALJ concluded:

> By not offering any challenge in regards [sic] to the citation involving the complaint investigation of June 13, 2013 . . . , the evidence stands as uncontroverted.

> Regarding the June 13, 2013 complaint investigation, further review of Pa.R.E. 803(25)(A)(D) and the hearing record leads this [ALJ] to conclude that [Momma D's] . . . staff members['] statements were all offered against [Momma D's], and they were made by [Momma D's] employees within the scope of their relationship with [Momma D's] as employees. These statements are admissible as an exception to the hearsay rule as statements of a party[-]opponent. (Exhibit C-2).

---

[14] Gatto testified that although the complainant reported the incident occurred on June 11, 2013, Momma D's employees indicated that it occurred on June 10, 2013. *See* R.R. at 114a.

12

ALJ Rec. at 14; *see also* R.R. at 199a.

Since it is clear based on the hearing transcript and the ALJ's recommendation that the ALJ twice considered and ruled upon Momma D's hearsay objection, Momma D's argument that the ALJ ignored it is meritless. Further, Momma D's cites no legal basis precluding the ALJ from changing her evidentiary ruling upon further review of the record, particularly when DPW's post-hearing brief again raised the issue. *See* R.R. at 205a, 208a, 222a-225a. Moreover, since the undisputed evidence supports the ALJ's conclusion that the employees who witnessed the June 10, 2013 incident prepared the written statements on "matter[s] within the scope of that relationship . . . while it existed," it would appear that the statements may qualify as admissions by a party[-]opponent. Pa.R.E. 803(25)(d).

However, because the ALJ sustained Momma D's hearsay objection at the hearing, Momma D's had no reason to and, therefore, did not attempt to rebut that evidence. When the ALJ later reversed her ruling and relied upon the statements in rendering her recommendation which BHA adopted, there was no forum in which Momma D's could offer rebuttal and, thus, Momma D's due process rights were violated in that limited manner.

Nevertheless, and Gatto's testimony notwithstanding, the law is clear that DPW may base Momma D's revocation on a single violation of the Code or DPW's Regulations, particularly where, as here, the violation "may endanger children."[15] *KC Equities*, 95 A.3d at 930. **Here, Momma D's certificate revocation**

---

[15] Section 3270.2 of DPW's Regulations states that "[t]he purpose [there]of . . . is to provide standards to **aid in protecting the health, safety** and rights of children **and to reduce risks** to children in child day care centers." 55 Pa. Code § 3270.2 (emphasis added). Accordingly, Section 1026(b)(1) of the Code, 62 P.S. § 1026(b), expressly authorizes DPW to revoke a license **for Code or DPW Regulation violations.** Section 20.71(a)(2) of DPW's Regulations provides that "[DPW] may deny, refuse to renew or revoke a certificate of compliance **for any of the following**: . . . . Noncompliance with [DPW's] . . . [R]egulations[.]" 55 Pa. Code § 20.71(a)(2) (emphasis added). Accordingly, this Court has long held that DPW revocations may be based upon **"[a]ny *one* [Code or DPW Regulation] violation[,]"** particularly "when regulatory violations may endanger

**was based upon more than a single violation.** Pinkney admitted that on May 17, 2013, Momma D's violated Sections 3270.51 (relating to similar age child group size/staff ratio), 3270.52 (relating to mixed age child group size/staff ratio), 3270.54(a) (relating to required minimum staffing) and 3270.113(a) (relating to staff supervision) of DPW's Regulations.[16] *See* R.R. at 252a, 259a-261a. With respect to the June 10, 2013 incident, Mommas D's was cited for violating Section 3270.113(c) (relating to ridiculing or threatening to harm a child) and Section 3270(e) (relating to child confinement) of DPW's Regulations. *See* R.R. at 252a, 258a. On June 22, 2013, Pinkney admitted that Momma D's violated Sections 3270.52 and 3270.54(a) of DPW's Regulations, despite having submitted a correction plan for the May 17, 2013 violations.[17] *See* R.R. at 252a, 256a. On July 3, 2013, Momma D's was cited for violating Section 3270.61(h) of DPW's Regulations (relating to indoor space capacity). *See* R.R. at 255a. Momma D's May 17, June 22 and July 3, 2013 violations were of staff-to-child supervision and capacity regulations specifically enacted to ensure the safety of children.

Since revocation can be based upon a single violation, and Pinkney admitted at least one, this Court "need not address the remaining violations." *Nancy Hadlock's Family Child Care Home v. Dep't of Pub. Welfare*, 103 A.3d 851, 857 (Pa.

---

children." *KC Equities*, 95 A.3d at 930 (bold emphasis added); *see also Nancy Hadlock's Family Child Care Home v. Dep't of Pub. Welfare*, 103 A.3d 851 (Pa. Cmwlth. 2014); *Altagracia De Pena Family Day Care v. Dep't of Pub. Welfare,* 943 A.2d 353 (Pa. Cmwlth. 2007); *Pine Haven Residential Care Home v. Dep't of Pub. Welfare*, 512 A.2d 59 (Pa. Cmwlth. 1986). In *Nancy Hadlock's Family Child Care Home*, this Court concluded that **because a single violation was sufficient to support revocation, and the subject facility admitted one violation, the Court "need not address the remaining violations."** *Id.* at 857 (emphasis added).

[16] Although Pinkney disputed the length of time, she admitted that after two staff members argued, one staff member left, leaving the other staff member to supervise 17 children who were in two different rooms. *See* R.R. at 144a-147a.

[17] The ALJ confirmed: "[Y]ou admit that there were more children -- that the staff-child ratio was more than it should have been on . . . June 22, 2013?" Pinkney responded: "Yes." R.R. at 144a.

14

Cmwlth. 2014).  Because even without consideration of the June 10, 2013 incident, Momma D's numerous other regulatory violations were of the type that "may endanger children," BHA's order revoking Momma D's Certificate is affirmed.  *KC Equities*, 95 A.3d at 930.


_____
ANNE E. COVEY, Judge

Momma D's Day Care Center, LLC, :
     Petitioner :
         :
    v.     :
         :
Department of Public Welfare,  :  No. 2009 C.D. 2014
     Respondent :

## O R D E R

AND NOW, this 23rd day of September, 2015, the Department of Public Welfare, Bureau of Hearings and Appeals' October 8, 2014 order is affirmed.

_____
ANNE E. COVEY, Judge