J-S33001-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: C.V., A MINOR | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.R.V., FATHER | : : : : : : | |
| | : | No. 1071 EDA 2021 |

Appeal from the Decree Entered April 29, 2021
In the Court of Common Pleas of Monroe County Orphans' Court at
No(s):  2021-00008

BEFORE:  BOWES, J., NICHOLS, J., and McLAUGHLIN, J.

MEMORANDUM BY BOWES, J.:                   **FILED DECEMBER 09, 2021**

J.R.V. ("Father") appeals from the April 29, 2021 decree terminating his parental rights to his minor son, C.V.  We affirm.

C.V. was born to Father and C.B. ("Mother") in November 2014.  Father is currently imprisoned at SCI Frackville, having been incarcerated since March 2015 for a heinous assault that he committed against C.V.[1]  Father has not had any contact with C.V. since the incident.  He has neglected his duty to pay child support and failed to send the child gifts or letters.

---

[1] Although the pertinent criminal docket reflects an incident date of February 1, 2015, Mother testified that the assault occurred on March 1, 2015.  ***See*** N.T. 4/28/21, at 4-6.  Notably, among other offenses, Father was convicted of aggravated assault, endangering the welfare of children, and recklessly endangering another person.  ***Id***. at 5, Exhibit P-1.  The trial court imposed an aggregate term of eighty-eight months to nineteen years of imprisonment. ***Id***., at Exhibit P-1.

During October 2018, Mother married A.B. ("Stepfather"), who C.V. has known since he was approximately two years old. On March 5, 2021, Mother and Stepfather filed a petition for the involuntary termination of Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), and a contemporaneous petition seeking Stepfather's adoption of C.V.

On March 29, 2021, Father was served with both petitions while at SCI Frackville and received the scheduling order notifying him of the ensuing hearing. As it relates to the crux of Father's appeal, the petition for adoption included the following warning:

<u>IMPORTANT NOTICE-NATURAL FATHER</u>

. . . .

YOU HAVE A RIGHT TO BE REPRESENTED AT THE HEARING BY A LAWYER. YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

Monroe County Bar Association Find a Lawyer
913 Main Street, PO Box 786
Stroudsburg, PA 18360
570-424-7288

Petition for Adoption, 3/5/21, unnumbered at 3.

Similarly, the face of the orphans' court's scheduling order contained the following paragraph informing Father of his right to counsel and instructing him how to request it. The order provided:

The parent of the child subject to the Involuntary Termination of Parental Rights/ Adoption is entitled to legal

counsel and should contact a lawyer immediately. If the parent cannot afford a lawyer, one will be appointed by the Court at no cost if so requested. **Such requests for legal counsel must be made by motion filed with the Clerk of the Orphans' Court**.

Order, 3/8/21 (emphasis added). Father did not request counsel, respond to the notice, or attend the evidentiary hearing.

As discussed further *infra*, at the outset of the hearing, the orphans' court confirmed the affidavit of service and noted that Father had not communicated with the court about the hearing. Accordingly, the hearing proceeded in Father's absence. After Mother and Stepfather each presented evidence, the orphans' court announced its decision to terminate Father's parental rights.[2] The court memorialized that determination in a decree and opinion entered the following day, April 29, 2021.

Thereafter, acting *pro se*, Father filed a timely notice of appeal. He failed to file a contemporaneous concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b); however, subsequent to an order of this Court and the appointment of counsel, Father complied with our directive to file a Rule 1925(b) statement by July 30, 2021.[3] The orphans'

---

[2] Pursuant to an order entered on March 8, 2021, the orphans' court appointed Hillary A. Madden, Esquire, to represent C.V. While counsel participated in the evidentiary hearing, she neglected to file a brief in this Court.

[3] As Father complied with our order to file the Rule 1925(b) statement by July 30, 2020, and there is no assertion of prejudice, we accept it as timely filed. **See In re K.T.E.L.**, 983 A.2d 745 (Pa.Super. 2009) (failure to file a 1925(b) concomitantly with a children's fast track appeal is considered a defective
*(Footnote Continued Next Page)*

court issued a statement pursuant to Pa.R.A.P. 1925(a), that relied upon the rationale outlined in the opinion that accompanied the April 29, 2021 decree.

With the assistance of counsel, Father raises the following issues for our review:

> 1. Whether the court violated . . . Father's right to due process by not allowing him to partic[i]pate in the hearing for termination of parental rights?
>
> 2. Whether the court erred in finding that petitioner proved the elements of [23 Pa.C.S. § 2511(a)(1)] and [23 Pa.C.S. § 2511(b)] through clear and convincing evidence?

Father's brief at 4 (unnecessary capitalization omitted).

Father's first argument asserts that the trial court violated his due process right by terminating parental rights *in absentia* and without providing counsel.[4]  We have stated, "A question regarding whether a due process violation occurred is a question of law for which the standard of review is *de novo* and the scope of review is plenary." ***S.T. v. R.W.***, 192 A.3d 1155, 1160

---

notice of appeal and will not be dismissed since failure to file the statement is a violation of a procedural rule and not an order of court).

[4] Although Father also challenged service in his Rule 1925(b) statement, that issue is waived because he failed to raise it in the statement of questions involved section of his brief or discuss it in his argument.  ***See Krebs v. United Refining Co.***, 893 A.2d 776, 797 (Pa.Super. 2006) (stating that a failure to preserve issues by raising them both in the concise statement of errors complained of on appeal and statement of questions involved portion of the brief on appeal results in a waiver of those issues; ***In re A.C.***, 991 A.2d 884, 897 (Pa.Super. 2010)) ("[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived.").

(Pa.Super. 2018) (quoting **Commonwealth v. Tejada**, 161 A.3d 313 (Pa.Super. 2017)) (internal citation omitted).

It is well-settled that infringement on parental rights implicates a parent's Fourteenth Amendment right to due process. **See In the Interest of A.P.**, 692 A.2d 240, 242 (Pa.Super. 1997) (stating that natural parents have a "fundamental liberty interest . . . in the care, custody, and management of their children") (citing **Santosky v. Kramer**, 455 U.S. 745, 753, 102 S.Ct. 1388, 1394, 71 L.Ed.2d 599 (1982)). "It has long been established that the right to make decisions concerning the care, custody, and control of one's children is one of the oldest fundamental rights protected by the Due Process Clause of the United States Constitution." **In re S.H.**, 71 A.3d 973, 979–80 (Pa.Super. 2013) (citing **Hiller v. Fausey**, 904 A.2d 875, 885 (Pa. 2006)). As we have explained, "[d]ue process requires nothing more than adequate notice, an opportunity to be heard, and the chance to defend oneself in an impartial tribunal having jurisdiction over the matter." **In re J.N.F.**, 887 A.2d 775, 781 (Pa.Super. 2005). Essentially, "[d]ue process is flexible and calls for such procedural protections as the situation demands." **In re Adoption of Dale A., II**, 683 A.2d 297, 300 (Pa.Super. 1996) (citing **Mathews v. Eldridge**, 424 U.S. 319, 334 (1976)).

As to the appointment of counsel for parents in involuntary termination proceedings, 23 Pa.C.S § 2313(a.1) provides, "[t]he court shall appoint counsel for a parent whose rights are subject to termination in an involuntary termination proceeding if, **upon petition of the parent**, the court determines

that the parent is unable to pay for counsel or if payment would result in substantial financial hardship." 23 Pa.C.S. § 2313(a.1) (emphasis added).

In support of his challenge to due process, Father contends that it is unknown whether he knew how to file a motion for an attorney and what attempts he made, if any, in this regard. **See** Father's brief at 8, 10-12. He further questions the procedures regarding communication with inmates in the Commonwealth's correctional facilities during the COVID-19 pandemic, as well as the limited amount of time afforded to retain an attorney. **Id**. at 10-11. Moreover, Father maintains that, to protect his interest, the orphans' court could have arranged for him to participate in the hearing virtually, something which is not burdensome and now normal. **Id**. at 11.

Notwithstanding the foregoing protestations, Father concedes, "[c]ase law in this area seems to tell us that as long as a parent is notified[,] he has a right to participate in the hearing and to have an attorney, then the right to due process has not been violated." **Id**. at 11. He, nonetheless, attempts to distinguish his case from that precedent, **In re J.N.F.**, 887 A.2d 775 (Pa.Super. 2005) and **In re Adoption of Dale A., II**, 683 A.2d 297 (Pa.Super. 1996), because the agency-triggered proceedings in those cases suggested the presence of counsel during at least the adjudications of dependency. **Id**. at 11-12. Father's argument is not persuasive.

While Father was entitled to counsel during the orphans' court proceedings, as expressly stated in § 2313(a.1) of the Adoption Act, the right to appointed counsel is not self-executing. **See** 23 Pa.C.S. § 2313(a.1).

Indeed, a parent must request the appointment of counsel "upon petition of the parent, [where] the court determines that the parent is unable to pay for counsel or if payment would result in substantial financial hardship." ***Id***. Furthermore, despite Father's arguments to the contrary, nothing in the Adoption Act or our pertinent jurisprudence suggests that the mere fact that Mother, rather than a child service agency, sought to terminate his parental rights rendered Father's statutory right to counsel automatic. Plainly, where a parent receives notice of the termination proceeding and neglects to request counsel, the orphans' court does not err in declining to appoint counsel *sua sponte*. ***See In re J.N.F.***, ***supra*** at 780-81 (finding court's failure to appoint counsel and arrange for an incarcerated father's participation in a termination hearing was not error where the unrepresented father did not file a motion or attempt to communicate with the court as to the appointment of counsel and did not communicate his desire to contest the petition to the court).

Instantly, Stepfather's petition for adoption, which was appended to the petition for the involuntary termination of parental rights, advised Father of his right to be represented by counsel and who to contact for legal assistance. Likewise, the face of the scheduling order contained notice that Father concedes tracked 23 Pa.C.S. § 2313(a.1). ***See*** Father's Brief at 10. Moreover, the affidavit of service, filed April 12, 2021, reflects personal service of the

petitions and scheduling order on Father on March 29, 2021.[5]  *See* Affidavit of Service, 4/12/21.

Furthermore, at the commencement of the hearing on April 28, 2021, the orphans' court paused and addressed Father's lack of communication with the court.  The orphans' court observed that "an Affidavit of Service . . . was served March 29, 2021, at SCI Frackville" and it concluded that it had "not been notified of any requests by [Father] for counsel, or to participate in any way." N.T., 4/28/21, at 3.

Father received notice of the hearing and was informed of his right to counsel.  Yet, he took no action to request counsel or signal his desire to contest the petitions and participate in the hearing.  Prior to proceeding with the evidentiary hearing, the orphans' court confirmed there was no contact from, or interaction with, Father.  Any arguments by Father as to his knowledge of how to request counsel, whether there was time to request counsel, or the status of inmate communication at correctional facilities during the COVD-19 pandemic, are purely speculative and hypothetical.  As Father was notified of the hearing and his right to counsel, Father's purported violations of due process are meritless.  *See In re J.N.F.*, *supra* at 780-81.

Turning to the termination of Father's parental rights, our standard of review is as follows:

---

[5] The certified record further reflects service of the petitions and order by mail on March 5, 2021, and March 8. 2021, respectively.

The standard of review in termination of parental rights cases requires appellate courts "to accept the findings of fact and credibility determinations of the trial court if they are supported by the record." *In re Adoption of S.P.*, 47 A.3d 817, 826 (Pa. 2012). "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." *Id*. "[A] decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." *Id*. The trial court's decision, however, should not be reversed merely because the record would support a different result. *Id*. at 827. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings. *See In re R.J.T.*, [9 A.3d 1179, 1190 (Pa. 2010)].

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). As we have stated, "The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G.*, 855 A.2d 68, 73-74 (Pa.Super. 2004) (citation omitted). Thus, "if competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." *In re Adoption of T.B.B.,* 835 A.2d 387, 394 (Pa.Super. 2003) (citation omitted).

The termination of parental rights is governed by § 2511 of the Adoption Act, 23 Pa.C.S. §§ 2101-2938, and requires a bifurcated analysis of the grounds for termination followed by the needs and welfare of the child.

Our case law has made clear that under [§] 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in [§] 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to [§] 2511(b): determination of the needs

- 9 -

and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (citations omitted). We have defined clear and convincing evidence as that which is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (quoting *Matter of Adoption of Charles E.D.M., II*, 708 A.2d 88, 91 (Pa. 1998)).

The trial court terminated Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), and (b), which provide as follows:

**(a) General rule.**--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

. . . .

**(b) Other considerations**.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(1), (b).

The following principles inform our review:

To satisfy the requirements of [§] 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. In addition,

Section 2511 does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child and refusal or failure to perform parental duties. **Accordingly, parental rights may be terminated pursuant to [§] 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties.**

Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to [§] 2511(b).

*In re Z.S.W.*, 946 A.2d 726, 730 (Pa.Super. 2008) (internal citations omitted) (emphasis added). Critically, incarceration does not relieve a parent of the obligation to perform parental duties. An incarcerated parent must "utilize available resources to continue a relationship" with his or her child. *In re Adoption of S.P.*, *supra* at 828.

In finding grounds for termination of Father's parental rights pursuant to § 2511(a)(1), the trial court reasoned:

Father is incarcerated for assaulting [C.V.]. He has had no contact with [C.V.] since the incident and his arrest [in March

- 11 -

2015]. Father has sent no cards or gifts, paid no support of any kind, has never filed for custody, and made no calls to [C.V.]. Father has been incarcerated since 2015, but has made no attempts at contact or to maintain a relationship. Further compounding the situation was Father's conviction for assaulting [C.V.] by shaking him as an infant, leading to his incarceration. Father has evidenced a settled purpose to relinquish his parental rights under [§] 2511(a)(1).

Trial Court Opinion, 4/29/21, at 5.

Father challenges the notion that the trial court's determination was based on clear and convincing evidence. In so doing, he points to his lack of ability to cross-examine witnesses or present evidence as to any contact with C.V. Father's brief at 8-9, 14. He argues:

In the instant case, [F]ather was not able to present a[n]y evidence either by way of documentation or testimony to show the length or quality of contact he has had with C.V. while incarcerated. He was also not able to cross examine or even hear the evidence that was presented by [M]other. Father didn't even have the chance to offer an explanation or defense to [M]other's claims. Because of this, the court had no chance to examine the circumstances of this case or type and frequency of contact. As such, it couldn't have come to a conclusion of clear conviction, without hesitation, of the truth of the precise facts in issue.

*Id*. at 14.

As we detail *infra*, the certified record supports the involuntary termination of parental rights pursuant to § 2511(a)(1). First, Father's abstract arguments regarding what could have happened during the proceedings had he actually participated relate to the implications of the orphans' court's termination of parental rights *in absentia*, and not any deficiency in the sufficiency of the evidence that was actually presented during the hearing. We previously rejected Father's due process claim relating to his

- 12 -

non-participation and it is a well-ensconced legal principle that appellate courts do not review sufficiency claims on a diminished record. ***See e.g., D'Alessandro v. Pennsylvania State Police***, 937 A.2d 404, 410 (Pa. 2007) (plurality).

Second, as indicated *supra*, incarceration does not relieve a parent of the obligation to perform parental duties. ***In re Adoption of S.P.***, ***supra*** at 828. The certified record reveals that Father has been incarcerated for almost the entirety of C.V.'s life and Father has neglected to have **any** contact with his son since the assault. N.T., 4/28/21, at 6-7, 11.[6] ***Id***. at 7, 11. Similarly, he failed to provide financial support or necessities, such as diapers or clothes. ***Id***. at 9.

Since the orphans' court's decision to terminate Father's parental rights pursuant to § 2511(a)(1) is supported by the competent, clear and convincing evidence that Mother and Stepfather presented during the hearing, we do not disturb it. ***See In re T.S.M.***, ***supra*** at 267.

We next determine whether termination was proper under § 2511(b).[7] As to § 2511(b), our Supreme Court has stated as follows:

---

[6] It is unknown if there is any type of no-contact order as a result of the criminal matters arising from the 2015 incident.

[7] As Father failed to raise this subsection in his Rule 1925(b) statement, this argument is waived. **See** Pa.R.A.P. 1925(b)(4)(vii) (issues not included in concise statement are waived). Nevertheless, in an abundance of caution, we briefly review the orphans' court's decision pursuant to § 2511(b).

[I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa.Super. 2012). In *In re E.M.*, [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791. However, as discussed below, evaluation of a child's bonds is not always an easy task.

*In re T.S.M.*, *supra* at 267.

When evaluating a parental bond, "[T]he court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, § 2511(b) does not require a formal bonding evaluation." *In re Z.P.*, 994 A.2d at 1121 (internal citations omitted). Furthermore, "[i]n cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa.Super. 2008) (citation omitted).

In finding that C.V.'s needs and welfare favored termination pursuant to § 2511(b), the trial court reasoned as follows:

A review of the factors for consideration under [§ 2511(b)] support termination of Father's parental rights. [C.V.] has no bond or relationship with Father. [C.V.] is bonded to Stepfather, knows him as his father, and calls him Daddy. The minor child does not know that Father is his natural father. Mother and Stepfather are now married, and Stepfather has a daughter who is bonded with [C.V.] and vice versa. Stepfather and [C.V.] have known each other since 2016, when [C.V.] was a young toddler.

- 14 -

> [C.V.] is now 6 1/2 years old with special needs, and Stepfather wants to make his relationship to [C.V.] permanent. The termination and proposed adoption is in [C.V.]'s best interest for these reasons as well.

Opinion, 4/29/21, at 5-6.

Again, Father protests that, as he was unable to offer evidence during the hearing, the trial court was only able to base its determination on Mother's unchallenged presentation. Father's brief at 15. He surmises, "[F]ather had played a part in his son's life up until the time of his incarceration and potentially continued to do so even while incarcerated, however, the court has no way of knowing [F]ather's side without hearing testimony or seeing evidence on [F]ather's case in chief." *Id*. This claim fails for the identical reason that we rejected his argument relating to § 2611(a)(1), *i.e.*, the competent evidence actually presented during the hearing was sufficient to support the orphans' court's decision.

C.V. has not had contact with Father since March 2015. N.T., 4/28/21, at 7. C.V. does not know who Father is, and instead believes that Stepfather, whom has been in his life since he was two years old and whom he calls "Daddy" is his father. *Id*. at 7-8. Stepfather stated that he loves C.V. and treats him like his biological son. *Id*. at 13-14. Mother's testimony confirmed Stepfather's involvement in C.V.'s treatment and support of C.V. *Id*. at 9. Accordingly, the record supports the finding that C.V.'s developmental, physical and emotional needs and welfare favor termination of parental rights pursuant to § 2511(b). **See T.S.M.**, **supra** at 267.

For all of the foregoing reasons, we find no abuse of discretion in the termination of Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1) and (b).

Decree affirmed.


*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*


*Date: 12/9/2021*