# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

B.A.S.,                                          :
                Petitioner       :
                                      :
                                      :   No. 1007 C.D. 2024
         v.                                      :
                                        :   Argued:  April 8, 2025
Pennsylvania Department of                       :
Education (Professional Standards                :
and Practices Commission),                       :
                Respondent       :

BEFORE:   HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE CHRISTINE FIZZANO CANNON, Judge
               HONORABLE LORI A. DUMAS, Judge

***<u>OPINION NOT REPORTED</u>***

**MEMORANDUM OPINION BY**
**JUDGE DUMAS**                                 **FILED:  August 11, 2025**

       B.A.S. petitions for review from the order entered by the Professional Standards and Practices Commission (Commission), suspending her teaching certificate under the Educator Discipline Act (Act).[1]  B.A.S. contends that the Commission's adjudicatory framework violates the law and the Commission relied on inadmissible hearsay to find she posed a threat to students.  We affirm in part, reverse in part, vacate in part, and remand.

## I. BACKGROUND[2]

       B.A.S. was a teacher in Westmoreland County when, in 2023, she was

---

[1] Act of December 12, 1973, P.L. 397, *as amended*, 24 P.S. §§ 2070.1a-2070.18a.  The Act's section numbers are distinct from "the sections provided in Purdon's Pennsylvania Statutes, which is an unofficial codification of Pennsylvania law."  *Herold v. Univ. of Pittsburgh*, 329 A.3d 1159, 1166 n.1 (Pa. 2025).  We refer to provisions of the Act "only by their Purdon's citation."  *Id.*

[2] We state the facts in the light most favorable to the Department as the prevailing party. *See Cinram Mfg., Inc. v. Workers' Comp. Appeal Bd. (Hill)*, 975 A.2d 577, 583 (Pa. 2009); *M.T. v. Dep't of Educ.*, 56 A.3d 1, 9 (Pa. Cmwlth. 2010); *Boguslawski v. Dep't of Educ.*, 837 A.2d 614, 616

charged with multiple counts of endangering the welfare of children, 18 Pa.C.S. § 4304(a)(1).  Notice of Charges, 4/11/24, at Ex. 1 (criminal complaint and affidavit of probable cause).  According to the affidavit of probable cause, in 2023, B.A.S., *inter alia*, (1) sprayed lemon juice and soapy water on one student, and (2) improperly restrained other students on multiple occasions.  *Id.*  B.A.S. was arrested and the charges bound over after a preliminary hearing.

In 2024, the Department of Education (Department) commenced disciplinary proceedings via a notice of charges that attached the criminal complaint, affidavit of probable cause, and criminal docket.  B.A.S. admitted she was charged and requested a hearing.[3]  At the hearing, the Department introduced the criminal complaint, affidavit of probable cause, and criminal docket.  B.A.S. objected based on hearsay, contending that the documents contained double hearsay.  Notes of Testimony (N.T.), 5/13/24, at 16-17, 23.  B.A.S. noted the "multiple levels of hearsay contained in the police complaint and the affidavit of probable cause." *Id.* at 20.  In her view, the Department was "bootstrapping" the hearsay to prove that B.A.S. posed a threat to the safety of students.  *Id.*

The Department countered that the documents were not hearsay because they were "not being offered to prove the truth of the allegations asserted within . . . ." *Id.* at 18.  In support, it emphasized it was offering the documents "to establish the conduct underlying why [B.A.S.] was charged in this matter," *id.*, because the "general nature of the allegations" alone was "sufficient evidence to prove the threat component." *Id.* at 21.[4]  The hearing officer overruled the hearsay

---

n.2 (Pa. Cmwlth. 2003).

[3] In this case, the hearing officer was not empowered to decide anything.  Rather, the Commission directed the hearing officer to only hold an evidentiary hearing and certify the record. *See generally* 24 P.S. §§ 2070.13(c), 2070.14.

[4] For completeness, the Department argued as follows: "With regards to the hearsay

2

objection and admitted the documents. *Id.* at 24.

Neither party presented any witnesses before resting. The hearing officer did not bar B.A.S. from rebutting the Department's case. *Id.* at 28. Both parties filed post-hearing briefs and proposed findings of fact. *See, e.g.*, Dep't's Br., 6/10/24, at 17-18 (maintaining that either the charges or allegations underlying the charges established that B.A.S. posed a threat); B.A.S.'s Br., 6/10/24, at 6 (arguing "the Department relied only on documents that contained multiple levels of hearsay to make their case"). The Commission heard oral arguments and suspended B.A.S.'s certificate.

The Commission held that the affidavit was not offered for the truth of its contents because the "allegations underlying the" charges support "a finding that the educator poses" a threat. Comm'n Op., 7/10/24, at 9. "The truth of those allegations is immaterial" because the Commission was making "no assertion about the educator's guilt or innocence of the charges alleged in the indictment." *Id.* In sum, the Commission held that because the affidavit "was not offered for the truth of the matter asserted, it cannot be characterized as hearsay." *Id.*

The Commission rendered 14 findings of fact, all but 4 of which were based on the affidavit. *Id.* at 3-5 (qualifying each such finding with the phrase, "According to the affidavit" and, for example, referencing witness statements). The Commission noted that B.A.S. failed to present any evidence or testimony that she did not pose a threat. *Id.* at 8. Based on its findings, the Commission held that the Department proved that B.A.S. poses a threat to students. *Id.* at 5. The Commission

argument, these documents are not hearsay. They are not being offered to prove the truth of the allegations asserted within the document. We're purely offering them to establish the conduct underlying why [B.A.S.] was charged in this matter. . . . The Commission is not tasked with determining whether the allegations are true for the purposes of an immediate suspension, but rather that they exist." N.T. at 18-19. The "Commission repeatedly has found that just the general nature of the allegations is sufficient evidence to prove the threat component." *Id.* at 21.

explained that "an indictment alone can satisfy both prongs of the Department's burden because the indictment is an 'objective fact' that must be based upon probable cause." *Id.* at 10-11. Combined with the magistrate judge's holding that probable cause existed, the Commission reasoned that if it accepted the factual allegations as true, B.A.S. was unfit to protect her students. *Id.* at 8-9, 11. B.A.S. timely appealed.

## II. ISSUES

First, B.A.S. contends that the Commission's legal framework improperly removes the Department's burden to prove that B.A.S. poses a threat to students. B.A.S.'s Br. at 4. Second, B.A.S. alleges the Commission erred by relying on hearsay within the indictment to prove she posed a threat to students. *Id.*

## III. DISCUSSION[5]

### A. No Rebuttable Presumption Exists

In support of her first issue, B.A.S. argues that the Commission's framework for implementing the Act's hearing shifted the burden of proof to her to disprove that she posed a threat to students. *Id.* at 11-12. B.A.S. reasons that at the hearing, the Department was required to "adduce evidence" to prove she was a threat. *Id.* at 11. B.A.S. faults the Commission for creating a "rebuttable presumption based solely on the existence of the indictment." *Id.* at 12. In her view, the indictment is not evidence she poses a threat, and thus, the Commission essentially required B.A.S. "to prove she is not a threat." *Id.* at 13. In support, she reasons that the Act requires a meaningful hearing, which cannot occur if the Commission allows

---

[5] We must affirm the agency's order unless we conclude that it violates the petitioner's constitutional rights, violates the law, or any fact necessary to the order is unsupported by substantial evidence. 2 Pa.C.S. § 704. "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. . . . The rule of substantial evidence is one of fundamental importance and is the dividing line between law and arbitrary" agency determinations. *Pa. State Bd. of Med. Ed. & Licensure v. Schireson*, 61 A.2d 343, 346 (Pa. 1948) (citation modified).

4

a rebuttable presumption in favor of "prosecutorial convenience." *Id.* at 14.

B.A.S. also argues that she was denied the right to be heard under the Commission's framework. *Id.* (citing 2 Pa.C.S. § 504).[6] By accepting the indictment into evidence, in B.A.S.'s view, the Commission never gave her "an opportunity to challenge, on the record, the credibility of the allegations" within the affidavit. *Id.* at 17. B.A.S. reasons the hearing was invalid because the Commission effectively "barred [her] from challenging the decisive factual issue." *Id.* at 15.[7]

In response, the Department highlights that B.A.S. conceded she was indicted. Dep't's Br. at 11, 16. The Department adds that B.A.S. was not required to disprove the factual allegations but was required to rebut the Department's evidence that B.A.S. posed a threat to students. *Id.* at 32.

The Act protects "children from the alleged perpetrator during the pendency of the litigation so as not to allow them to be subject to the crimes involved." *Petron v. Dep't of Educ.*, 726 A.2d 1091, 1095 (Pa. Cmwlth. 1999) (*en banc*) (Pellegrini, J., concurring). Under a prior version of the Act, the Commission could suspend a teacher's certificate based solely on "an indictment for a crime involving moral turpitude." *Id.* at 1094 (citing 24 P.S. § 2070.5(a)(11), which was deleted by the Act of December 1, 2013, P.L. 1205). In *Petron*, the teacher had argued that due process required a meaningful hearing to consider whether the charged conduct "when measured by the standards applicable to all teachers," justified

---

[6] "No adjudication of a Commonwealth agency shall be valid as to any party unless he shall have been afforded reasonable notice of a hearing and an opportunity to be heard. . . ." 2 Pa.C.S. § 504.

[7] Although B.A.S. raises the following argument for her second issue, it more appropriately dovetails with her first issue. B.A.S. argues she was denied her procedural due process rights, including the right to cross-examine witnesses. B.A.S.'s Br. at 27-31. The Department maintains B.A.S. waived this claim and that she received adequate procedural due process through notice and a hearing. Dep't's Br. at 33-40. The Department also argues the process complies with substantive due process, which B.A.S. does not challenge. *Id.* at 40-45; B.A.S.'s Reply Br. at 6-9.

suspension. *Id.* The *en banc* Court agreed that the teacher was entitled to the relief of a prompt, post-deprivation hearing. *Id.* & n.10.

Subsequently, the Act was amended to generally permit a hearing. *See* 24 P.S. § 2070.5(a)(11.1) (citing, *inter alia*, 24 P.S. § 2070.9b). Under Section 2070.9b, the Commission must immediately suspend a teacher's certificate when the Department proves two factors: (1) an indictment for an enumerated offense; and (2) the teacher "poses a threat to the health, safety or welfare of students" in schools. 24 P.S. §§ 2070.9b(a)(1), 2070.13(c)(2); 22 Pa. Code § 233.120(c).[8] The Department proves the first factor with the indictment. 24 P.S. § 2070.9b(a)(1); 22 Pa. Code § 237.9(d)-(e). The Commission examines whether the indictment includes an offense listed in 24 P.S. § 1-111(e)(1)-(3). 24 P.S. § 2070.9b(a)(1); 22 Pa. Code § 237.9(c).[9]

The Department proves the second factor by presenting "specific facts and circumstances" that demonstrate the teacher poses a threat under the unique circumstances of the case. 24 P.S. § 2070.9b(a)(1); *S.E.N. v. Dep't of Educ.*, 324 A.3d

_____

[8] The Commission must direct "the [D]epartment to immediately suspend the certificate and employment eligibility of an educator indicted for a crime set forth in [24 P.S. § 1-111], or the attempt, solicitation or conspiracy to commit any crime set forth in that section if the commission, after notice and hearing if requested, determines that the educator poses a threat to the health, safety or welfare of students or other persons in the schools of this Commonwealth in accordance with" various conditions. 24 P.S. § 2070.9b(a)(1); *accord* 22 Pa. Code § 233.120(c).

The Act mandates that the "burden of proof shall be on the [D]epartment, which shall act as prosecutor, to establish by a preponderance of the evidence that grounds for discipline exist." 24 P.S. § 2070.13(c)(2). It follows that the Commission, in its adjudicatory role, acts as a neutral arbiter and not as the prosecutorial arm of the Department. *Id.*; 24 P.S. §§ 2070.9(d), 2070.18(a).

[9] 22 Pa. Code § 237.9 addresses crimes involving moral turpitude, which is defined as any offense listed at 24 P.S. § 1-111(e)(1), which includes corruption of minors and endangering the welfare of children. 22 Pa. Code § 237.9(c)(1). Thus, the Department must present an indictment that includes a crime involving moral turpitude, and the Code generally requires the Commission to accept a copy of such indictment. 22 Pa. Code § 237.9(d)-(e) (defining indictment to include "a criminal complaint, criminal information or other similar document"); *see generally Gilbert v. Homar*, 520 U.S. 924, 934 (1997) (explaining that when "an independent third party has determined that there is probable cause to believe the [state] employee committed a serious crime," "the state employer's decision to suspend the employee is not baseless or unwarranted" (citation modified)).

686, 698 (Pa. Cmwlth. 2023). The unique circumstances of the case may require the Commission to resolve whether the teacher's alleged conduct has a sufficient "nexus to the health, safety, or welfare of students or others in schools." *S.E.N.*, 324 A.3d at 698. The teacher may rebut the Department's evidence with her own evidence and witnesses that she does not pose a threat.

Rebutting evidence differs from a rebuttable presumption, which is a legislative or "judicial declaration" that establishing one fact requires assuming a second fact exists. *Waters v. New Amsterdam Cas. Co.*, 144 A.2d 354, 356 (Pa. 1958). Once a presumption applies, the burden shifts to the defendant to introduce credible evidence; if she fails to rebut with credible evidence, the presumed fact is established as a matter of law. *Id.*; *accord City of Pittsburgh v. Workers' Comp. Appeal Bd. (Robinson)*, 67 A.3d 1194, 1204 (Pa. 2013).[10] For example, evidence of unexplained child abuse creates a *prima facie* presumption of abuse by the caretaker that shifts the burden to the caretaker to rebut. *E.M. v. Dep't of Hum. Servs.*, 191 A.3d 44, 52 (Pa. Cmwlth. 2018) (discussing 23 Pa.C.S. § 6381(d)).[11]

Instantly, the Act does not legislate any rebuttable presumption. Under the Act, to suspend B.A.S.'s teaching certificate immediately, the Department must present competent *evidence* that B.A.S. poses a threat to students. *See* 24 P.S. §§ 2070.9b(a)(1), 2070.13(c)(2). Unlike 23 Pa.C.S. § 6381(d), which legislates a rebuttable presumption when the agency presents evidence of certain child abuse,

---

[10] *See generally 500 James Hance Ct. v. Pa. Prevailing Wage Appeals Bd.*, 33 A.3d 555, 576 (Pa. 2011); *Waddle v. Nelkin*, 515 A.2d 909, 912 (Pa. 1986) (plurality) ("Presumptions may be looked on as the bats of the law, flitting in the twilight, but disappearing in the sunshine of actual facts." (citation modified)).

[11] "Evidence that a child has suffered child abuse of such a nature as would ordinarily not be sustained or exist except by reason of the acts or omissions of the parent or other person responsible for the welfare of the child shall be *prima facie* evidence of child abuse by the parent or other person responsible for the welfare of the child." 23 Pa.C.S. § 6381(d).

the Act does not state that when the Department presents evidence of the *indictment*, that is *prima facie* evidence that B.A.S. poses a threat, which B.A.S. must rebut. *See E.M.*, 191 A.3d at 52; *Waters*, 144 A.2d at 356. Because the Act does not impose a rebuttable presumption and requires the Department to present evidence that B.A.S. poses a threat, we reject B.A.S.'s argument. To the extent B.A.S. assails the allegations within the indictment, we address that below.

## B. Hearsay, Right of Confrontation, and Right to Cross-Examine[12]

### 1. Arguments

For B.A.S.'s second issue, the parties dispute whether the Department may only rely on the allegations within the indictment as factual support that B.A.S. poses a threat to students. B.A.S. stresses that she timely objected to the statements within the indictment as hearsay. B.A.S.'s Br. at 18-20 (discussing *Walker v. Unemployment Comp. Bd. of Rev.*, 367 A.2d 366 (Pa. Cmwlth. 1976)). The *Walker* Court held that hearsay "evidence in administrative proceedings, properly objected to, is not competent evidence to support a finding of fact." *Id.* at 19 (paraphrasing *Walker*). B.A.S. argues that because the indictment contains "out-of-hearing statements of both the police officer and (unnamed) witnesses referenced throughout," such statements "are undoubtedly hearsay." *Id.* at 20. Because the Commission relied on inadmissible hearsay, B.A.S. asserts the Commission's finding that she poses a threat is flawed. *Id.* at 26.

The Department counters that the indictment alone can establish that B.A.S. poses a threat because the indictment "is an 'objective fact' that must be based

---

[12] We review an agency's "admission or exclusion of evidence in an administrative proceeding" for an abuse of discretion, which includes an error of law. *D'Alessandro v. Pa. State Police*, 937 A.2d 404, 410 (Pa. 2007) (plurality) (*D'Alessandro II*); *Am. C.L. Union of Pa. v. Pa. State Police*, 232 A.3d 654, 662-63, 665 (Pa. 2020). We may rely on nonconflicting case law that predates the rules of evidence, which were enacted in 1998. *Commonwealth v. Aikens*, 990 A.2d 1181, 1185 n.2 (Pa. Super. 2010).

upon probable cause to believe that" B.A.S. committed the alleged criminal acts. Dep't's Br. at 23-25 (citing, *inter alia*, *Dep't of Educ. v. Minnich*, No. DI-16-031 (filed May 26, 2016) (*Minnich I*), slip op. at 3 n.3, *aff'd*, *S.D.M. v. Dep't of Educ. (Pro. Standards & Pracs. Comm'n)* (Pa. Cmwlth., No. 1011 C.D. 2016, filed May 22, 2017) (*Minnich II*) (sealed), *S.E.N.*, 324 A.3d 686, and *C.A.R. v. Dep't of Educ. (Pro. Standards & Pracs. Comm'n)* (Pa. Cmwlth., No. 345 C.D. 2023, filed July 12, 2024) (sealed)). The Department reiterates the criminal allegations, which the Department argues called "into question her ability to protect the health, safety, and welfare of students." *Id.* at 26. In the Department's view, B.A.S.'s alleged actions, "if true," posed a threat to students. *Id.* at 28.[13] The Department emphasizes that B.A.S. rested without calling any witnesses or presenting any evidence in rebuttal. *Id.* at 32.[14]

## 2. Legal Background

The Department must prove the teacher "poses a threat to the health, safety or welfare of students or other persons" in schools. 24 P.S. § 2070.9b(a)(1). This determination presents a mixed question of fact and law requiring fact-intensive analysis. *See J.S. ex rel. M.S. v. Manheim Twp. Sch. Dist.*, 263 A.3d 295, 305 n.11 (Pa. 2021). A reviewing court "shall affirm . . . unless it shall find that the adjudication [violates] the constitutional rights of the appellant, or is not in accordance with law, or that the provisions of [2 Pa.C.S. §§ 501-508] have been

---

[13] *Cf.* N.T. at 18 (reflecting the Department's argument that the indictment was "not being offered to prove the truth of the allegations asserted within"). Because hearsay is an out-of-court statement presented for the truth of the matter asserted, the Department's "if true" qualifier is somewhat troubling. Any factual allegations underlying a criminal offense "if true" may be proof that the teacher presently poses a threat.

[14] In other words, the Department argues the indictment is not impermissible hearsay because it is used only to prove that B.A.S. was indicted. Yet, the Department also argues that the criminal allegations, *i.e.*, the factual averments substantiating criminal offenses, may be used to factually prove that B.A.S. poses a threat to students. *Accord* Comm'n Op. at 8. The Department's citation to *Minnich I* in its brief did not reflect its subsequent history, *i.e.*, this Court decided *Minnich I* on appeal in *Minnich II*.

violated in the proceedings before the agency, or that any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence." 2 Pa.C.S. § 704.

In agency proceedings involving "inherent and indefeasible rights," agencies must "afford heightened evidentiary protection," which may require applying standard judicial hearsay rules. *D'Alessandro II*, 937 A.2d at 412. However, a teaching certification is an occupational privilege within a regulatory framework, and not a fundamental right. *S.E.N.*, 324 A.3d at 699-700; *see Nixon v. Commonwealth*, 839 A.2d 277, 287-88 (Pa. 2003). The Department's temporary suspension of a teaching certificate does not result in a permanent deprivation of any fundamental right, unlike the permanent loss of a right to bear arms, lifetime listing in the child abuse registry, or termination of parental rights. *See S.E.N.*, 324 A.3d at 700-01; *D'Alessandro II*, 937 A.2d at 410; *A.Y. v. Dep't of Pub. Welfare*, 641 A.2d 1148, 1150 (Pa. 1994); *In re A.J.R.-H.*, 188 A.3d 1157, 1179 (Pa. 2018). Thus, this Commission proceeding is not bound by the standard hearsay rules in judicial proceedings and is subject to 2 Pa.C.S. § 505.

Generally, "agencies shall not be bound by technical rules of evidence at agency hearings, and all relevant evidence of reasonably probative value may be received."[15] 2 Pa.C.S. § 505. "With regard to the use of hearsay in administrative proceedings, it has long been established that hearsay evidence, properly objected to, is not competent evidence to support a finding of the" agency. *Ives v. Bureau of Pro. & Occupational Affs., State Bd. of Med.*, 204 A.3d 564, 574 (Pa. Cmwlth. 2019) (citation modified) (quoting *Walker*, 367 A.2d at 370).[16] "Hearsay evidence,

---

[15] Rules of evidence that apply to agency proceedings include rules that govern personal knowledge, opinion testimony by lay witnesses, and expert testimony. *Gibson v. Workers' Comp. Appeal Bd. (Armco Stainless & Alloy Prods.)*, 861 A.2d 938, 947 (Pa. 2004); Pa.R.E. 101 cmt.

[16] *Ives* stated that the "strictures on the use of unobjected to hearsay are known as the

10

admitted without objection, will be given its natural probative effect and may support a finding of the [agency], if it is corroborated by any competent evidence in the record, but a finding of fact based solely on hearsay will not stand." *Id.* (citation modified). In other words, an agency may not rely on unobjected-to, uncorroborated hearsay as its only support for a finding of fact—such evidence is not "substantial and legally credible evidence." *Schireson*, 61 A.2d at 346 (citation modified).

Hearsay "means a statement that (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Pa.R.E. 801 (citation modified). A statement, like a police report or affidavit of probable cause, may contain "multiple levels of hearsay. Where a hearsay document contains additional hearsay within it (often referred to as 'double hearsay'), each level of hearsay must satisfy an exception to the rule prohibiting the admission of hearsay evidence." *In re A.J.R.-H.*, 188 A.3d at 1161, 1169 (citations omitted).

Absent an exception, hearsay evidence is inadmissible. *Pa. State Police v. 139 Horseshoe Corp.*, 629 A.2d 290, 293 (Pa. Cmwlth. 1993) (*Horseshoe*). It is inadmissible because "hearsay statements lack guarantees of trustworthiness and cannot be tested by cross-examination," and due process requires "that a party be afforded a reasonable opportunity to challenge . . . the reliability of [such] adverse evidence" absent a hearsay exception equivalent to "the guarantees of trustworthiness . . . from a declarant's presence in court." *Id.* (citation modified). One hearsay exception provides that a "copy of a record authenticated as provided

---

'*Walker* rule.'" *Ives*, 204 A.3d at 574 (rejecting the agency's invocation of *Walker* because the litigant had objected based on hearsay). Other cases, however, more broadly define the "*Walker* rule" as encompassing the guidelines for objected-to *and* unobjected-to hearsay. *See, e.g.*, *Rox Coal Co. v. Workers' Comp. Appeal Bd. (Snizaski)*, 807 A.2d 906, 915 (Pa. 2002). Under either definition, the Commission admitted the indictment over the teacher's hearsay objection.

in [42 Pa.C.S. § 6103] disclosing the existence or nonexistence of facts which have been recorded pursuant to an official duty . . . shall be admissible as evidence of the existence or nonexistence of such facts, unless the sources of information or other circumstances indicate lack of trustworthiness." 42 Pa.C.S. § 6104(b).[17]

In sum, when an adversary objects to evidence based on hearsay, the evidence cannot support an agency's finding of fact unless the evidence falls within a recognized hearsay exception. If a proponent successfully establishes that objected-to hearsay falls within a recognized hearsay exception, *e.g.*, 42 Pa.C.S. § 6104(b), then the evidence becomes admissible hearsay that can support an agency's finding of fact without additional corroboration. When hearsay evidence is admitted without objection, such evidence must be corroborated by competent evidence to support an agency's finding of fact.[18]

In *D'Alessandro II*, our Supreme Court addressed whether a police report could be admitted as an official record under 42 Pa.C.S. § 6104(b) to prove domestic violence was an element of the appellee's conviction. *D'Alessandro II*, 937 A.2d at 414. The Pennsylvania State Police (PSP) had denied the appellee's gun license application based on a conviction involving domestic violence. *Id.* at 406.

---

[17] 42 Pa.C.S. § 6103(a) states: "An official record kept within this Commonwealth by any court, magisterial district judge or other government unit, or an entry therein, when admissible for any purpose, may be evidenced by an official publication thereof or by a copy attested by the officer having the legal custody of the record, or by that officer's deputy, and accompanied by a certificate that the officer has the custody." 42 Pa.C.S. § 6103(a). This exception can be invoked in agency proceedings subject to 2 Pa.C.S. § 505 or more formal judicial hearsay rules. *See D'Alessandro II*, 937 A.2d at 412. If the proponent presents an official record at an agency proceeding, and an adversary objects based on hearsay, then the proponent may invoke 42 Pa.C.S. § 6104(b) to rehabilitate the evidence.

[18] The disputed evidence may not even fall within the definition of hearsay. For example, a declarant's question typically is a request for information and thus, not a statement presented for the truth of the matter asserted. Again, to avoid any misunderstanding, a tribunal's ruling that evidence is admissible hearsay does not mean the tribunal must be persuaded by such evidence.

At the administrative appeal hearing, PSP introduced a police report that (1) listed the same address for the appellee and the victim, and (2) contained the disputed statement that the appellee had hit his "live in girlfriend."[19] *Id.* at 407. The appellee objected to the report as hearsay and the statement as double hearsay, but the administrative law judge (ALJ) overruled the objections and admitted the report as a certified record. *Id.* Significantly, the appellee testified at the hearing to a sexual relationship with the victim while denying they cohabitated. *Id.* at 407-08.

Our Supreme Court held that the police report was admissible under 42 Pa.C.S. § 6104(b). *Id.* at 414. The Court applied two indicia of trustworthiness: (1) the report contained no obvious errors; and (2) nothing indicated the disputed statement "originated from an unreliable source." *Id.* Regarding the latter factor, the Court reasoned it was logical to assume the statement was either confirmed by the appellee or the victim, or observed by the investigating officer "upon viewing personal items in the home."[20] *Id.* The Court held the disputed statement was independently admissible under 42 Pa.C.S. § 6104(b).[21] *Id.*

_____

[19] Specifically, PSP had introduced the appellee's criminal record, which "included a police report, produced at [the administrative hearing] by John Schneider, a witness employed by the PSP who received the report from the Pittsburgh Police Department." *D'Alessandro II*, 937 A.2d at 407. The disputed statement follows in full: "Upon arrival, Actor meet [sic] us at the door and stated that he had called the medics because he hit the victim, his live in girlfriend, knocking her to the floor, and that she was unconscious." *Id.* at 416 (Saylor, J., concurring) (alteration in original).

[20] Precisely, it was reasonable "to assume that the investigating police officer would need to probe the relationship of the parties, and their addresses, in order to collect information for charging decisions, for providing notice, etc. Of course, it is possible that the police officer made an assumption about [the] appellee's relationship with the victim and . . . he made assumptions about the parties' addresses. But there is no proof of that, nor is there reason to believe that the police officer did so given the information that the officer was required to collect in order to conduct a thorough investigation. Lastly, there is no concern that the police officer might have purposefully misrepresented things to bolster a firearms licensing case against appellee . . . ." *D'Alessandro II*, 937 A.2d at 414.

[21] Although the appellee had raised a double hearsay argument below, the appellee did not

13

The *D'Alessandro II* concurrence emphasized that double hearsay requires separate exceptions for each level. *Id.* at 416 (Saylor, J., concurring). When a police report contains an out-of-court statement by a declarant other than the report's author, that statement constitutes double hearsay and needs an independent hearsay exception. *Id.* As noted therein, the appellee's statement was an admission by the appellee as a party opponent. *Id.*

Importantly, our Supreme Court criticized this Court for conflating "evidentiary review with sufficiency review." *Id.* at 409, 415. Previously, on appeal to this Court, we had parsed the police report and held that "only statements in the police report relevant to the assault could be deemed trustworthy, namely, statements pertaining to [the] appellee injuring the victim and the addresses listed for both individuals." *Id.* at 408. However, "any reference in the report to the victim being appellee's 'live in girlfriend'" was "suspect" because it was "not clear that it was an official duty of the police officer investigating the assault to make the factual determination of whether or not [the appellee] and the victim cohabitated . . . ." *Id.* (citation modified). We reasoned that the "facts in the police report are not admissible under 42 Pa.C.S. § 6104(b) for the purpose of attempting to establish" cohabitation. *Id.* (citation modified). After disregarding the police "report's reference to the victim being appellee's 'live in girlfriend,'" this Court held that PSP failed to prove the appellee committed a crime of domestic violence that would disqualify him from a gun license, and reversed PSP. *Id.*

Our Supreme Court rejected this Court's reversal, holding that the proper remedy for inadmissible evidence was a "remand for a new hearing without

---

reraise it before our Supreme Court. *D'Alessandro II*, 937 A.2d at 415 n.10; *but see id.* at 415 (Saylor, J., concurring) (crediting the appellee's double hearsay argument). Nevertheless, the lead opinion agreed with the concurrence's analysis of double hearsay. *Id.* at 415 n.10.

the prohibited evidence." *Id.* at 410. The *D'Alessandro II* Court distinguished between admissibility and sufficiency, finding that even without the disputed "live in girlfriend" statement, sufficient evidence supported the domestic violence finding because the appellee had testified about his sexual relationship with the victim and the police report listed the same address for the parties. *Id.* at 414. Our Supreme Court concluded that the disputed statement was both admissible and unnecessary for the tribunal to find they were cohabitating. *Id.* at 415. Substantial competent evidence existed supporting PSP's denial of a gun license for appellee. *Id.*

### 3. Discussion

In this section, we address three issues: whether (1) the affidavit of probable cause itself constitutes hearsay; (2) the affidavit itself is admissible under the official records exception at 42 Pa.C.S. § 6104(b); and (3) the double hearsay within the affidavit requires separate exceptions.

For the first issue, we hold that the affidavit of probable cause unquestionably constitutes hearsay (and itself contains double hearsay). The Department, somewhat confusingly, contends otherwise, arguing that because it was "not being offered for the truth of the" allegations asserted, it was not hearsay. Dep't's Br. at 18. However, the Department also argues that the teacher's alleged actions, "if true," pose a threat to students. *Id.* at 28 (failing, apparently, to distinguish between the affiant's out-of-court statement, and the double hearsay within the affiant's statement). The Commission similarly reasoned that if it accepted the double hearsay as true, the teacher was no longer fit to protect students. Comm'n Op. at 8.

Respectfully, the Department's contention necessarily requires that the factfinder believe the following. First, the factfinder must believe that the affidavit

15

of probable cause is a trustworthy out-of-court statement presented for the truth of the matter asserted, *i.e.*, the affiant faithfully recorded his personal knowledge under an official duty. Second, the factfinder must believe that the factual allegations within the affidavit (as recorded by the affiant), *e.g.*, B.A.S. sprayed lemon juice and soapy water into a student's mouth, and B.A.S. improperly restrained other students. This is the textbook definition of hearsay (and hearsay within hearsay) under Pa.R.E. 801. The Commission erred by admitting the affidavit based on the Department's argument that it was not hearsay.[22]

Because B.A.S. correctly objected to the affidavit as hearsay, it is not competent to support any Commission finding of fact absent an exception. *See Ives*, 204 A.3d at 574. However, we may affirm the Commission on other grounds, including exceptions to the hearsay rule, such as the official records exception. *See White v. Workmen's Comp. Appeal Bd. (Good Shepherd Rehab Hosp.)*, 666 A.2d 1128, 1131 n.6 (Pa. Cmwlth. 1995).[23]

Turning to the second issue, we next examine whether the affidavit itself qualifies under the official records exception to hearsay at 42 Pa.C.S. § 6104(b). Specifically, we address two indicia of trustworthiness: whether (1) the affidavit

---

[22] To be clear, we reject the Department's argument that the indictment is not hearsay. *See also* Dep't's Br. at 17-18; Comm'n Op. at 8-9; *cf. S.E.N.*, 324 A.2d at 698 (explaining that not every alleged crime necessarily proves that the teacher poses a threat).

[23] *White*, in support, cited to *Rhoads v. Lancaster Parking Authority*, 520 A.2d 122, 131 (Pa. Cmwlth. 1987), which affirmed a trial court—not an agency—on other grounds. *See generally* Justice Thomas G. Saylor, *Right for Any Reason: An Unsettled Doctrine at the Supreme Court Level and an Anecdotal Experience with Former Chief Justice Cappy*, 47 Duq. L. Rev. 489, 490 n.2 (2009) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 88, 95 (1943), as "applying the converse rule in appellate review of orders of administrative agencies, *i.e.*, that federal courts will not affirm agency decisions based upon reasoning not considered by the agency"). Justice Saylor also suggested that "the right-for-any-reason doctrine should not be applied rotely. Rather, in light of the prudential character of the principle, the reviewing court must exercise care in its application to ensure fundamental fairness." *Id.* at 492 n.10 (citation modified).

contains obvious errors; and (2) anything indicates that the disputed evidence was from an unreliable source. *See* 42 Pa.C.S. § 6104(b); *D'Alessandro II*, 937 A.2d at 414. Upon review, we perceive no obvious errors or indication that the affiant was unreliable. *See D'Alessandro II*, 937 A.2d at 414. Akin to the *D'Alessandro II* officer contemporaneously memorializing the appellee's statement in the police report, the instant affiant appears to have faithfully recorded his personal knowledge from interviews he conducted with witnesses.[24] *See id.* The affidavit itself, as an out-of-court statement presented for the truth of the matter asserted, falls within the hearsay exception at 42 Pa.C.S. § 6104(b). We affirm the Commission's decision to admit the affidavit itself on other grounds. *See White*, 666 A.2d at 1131 n.6.

Last, we address the third issue, *i.e.*, the double hearsay in the affidavit. *D'Alessandro II* addressed double hearsay: the disputed statement made by the appellee within the police report, which characterized the victim as the appellee's "live in girlfriend." Although the appellee had objected based on double hearsay before the ALJ, he failed to preserve his argument before our Supreme Court. *D'Alessandro II*, 937 A.2d at 415 n.10. Nevertheless, the truthfulness of the appellee's out-of-court statement (memorialized within the police report—also an out-of-court statement) was corroborated by both the appellee's own testimony at the agency hearing and other evidence within the same police report, such as, *e.g.*, the same address listed for both the appellee and the victim. *See id.* at 414. Further, the lead opinion agreed that the appellee's statement was an admission of a party opponent. *Id.* at 415 n.10.

By contrast, the instant affidavit contains numerous out-of-court statements—factual allegations from interviews with witnesses—that purport to

---

[24] Section 6104(b) suggests that the burden is on B.A.S. to establish the affidavit lacks "trustworthiness." We do not address this issue.

prove the alleged criminal offenses. B.A.S. also preserved her double hearsay argument, unlike the *D'Alessandro II* appellee. Because the Commission admitted the double hearsay as non-hearsay, the Commission did not address any exception. *See Horseshoe*, 629 A.2d at 293; *A.J.R.-H.*, 188 A.3d at 1169; *D'Alessandro II*, 937 A.2d at 416 (Saylor, J., concurring). As a result, the Commission rendered 14 findings of fact, each qualified with "according to the affidavit." *See, e.g.*, Comm'n's Op. at 3-5 (finding "according to the affidavit, . . . a witness saw [B.A.S.] spray lemon juice and soapy water into" one student's mouth (citation modified)).

Because of the Commission's erroneous ruling, the Commission judged the evidence solely "through the prism provided by the" Department. *Cf. A.Y.*, 641 A.2d at 1152. Akin to the agency in *A.Y.*, the Department was "able to justify" suspending B.A.S.'s certificate without producing any independent corroborative evidence. *Cf. id.* Respectfully, permitting the Department to introduce double hearsay without any exception removes too much of the Department's prosecutorial burden. *Cf. id.* Although we affirm the Commission's decision to admit the affidavit itself on other grounds under 42 Pa.C.S. § 6104(b), we hold that the admission of the double hearsay was in error.[25]

We further reject the Department's reliance on *S.E.N.* and *Minnich II*, as we explicitly declined to address whether an indictment alone could satisfy the Department's burden precisely because additional corroborative evidence existed in those cases. *See S.E.N.*, 324 A.3d at 697; *Minnich II*, slip op. at 12. Neither case decided whether the Commission could rely solely on an indictment to prove the teacher poses a threat to students. *See S.E.N.*, 324 A.3d at 695, 697; *Minnich II*, slip

---

[25] Even if the teacher did not object to the double hearsay, the record reflects no corroboration. *Cf. D'Alessandro II*, 937 A.2d at 414 (noting this Court "curiously" disregarded the appellee's own corroborative testimony that he had a sexual relationship with the victim).

op. at 12.  *C.A.R.* is a non-precedential decision that does not bind this Court.  *See* Pa.R.A.P. 126.[26]

Having determined that the Commission erroneously admitted double hearsay, we must identify the proper remedy.  When an agency relies on inadmissible evidence, ordinarily, the appropriate remedy is remand for a new hearing without the prohibited evidence, rather than outright reversal.  *D'Alessandro II*, 937 A.2d at 410 (citing *Commonwealth v. Conklin*, 897 A.2d 1168, 1175 n.12 (Pa. 2006), but holding, nevertheless, that the double hearsay was admissible on other grounds).  However, we cannot heed our Supreme Court's suggestion to remand without the prohibited evidence.  First, unlike the appellee in *D'Alessandro II*, the teacher preserved her double hearsay argument for appellate review.  Second, the Commission admitted the evidence as non-hearsay and thus, did not address any hearsay exceptions.  Accordingly, we must remand for a hearing at which the Department must invoke the exceptions to the double hearsay it seeks to present, and then the Commission will rule.  The Commission's findings must comply with 2 Pa.C.S. § 704.

## IV. CONCLUSION

Initially, we distinguish between the indictment as a document and the truth of the statements contained within it.  We affirm admission of the indictment itself as an official record under 42 Pa.C.S. § 6104(b), but reverse admission of the double hearsay.  We vacate the Commission's order suspending the teacher's license.  We remand for a new hearing at which the Department may continue to rely on the indictment to establish the teacher was charged with an enumerated offense under

---

[26] We leave for another day the issue of the minimum quantum of evidence that the Department must present in order to sustain its burden of proof that the teacher poses a threat.  *See Brown v. Dep't of Justice*, 715 F.2d 662, 668 (D.C. Cir. 1983).  We need not address whether (1) a defendant's waiver of a preliminary hearing, or (2) the magistrate district judge's decision addressing probable cause is a "fact" proving the teacher poses a threat.  Nothing in our decision bars the Department from pursuing other administrative remedies.

19

24 P.S. § 1-111. For each double hearsay within the indictment the Department wishes to present, it must invoke an exception, and the Commission must rule. We therefore affirm in part, reverse in part, vacate in part, and remand for a new hearing.


_____

**LORI A. DUMAS, Judge**

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

B.A.S.,                           :

           Petitioner         :

                          :   No. 1007 C.D. 2024

          v.                  :

                          :

Pennsylvania Department of     :

Education (Professional Standards  :

and Practices Commission),      :

          Respondent    :

## O R D E R

AND NOW, this 11th day of August, 2025, we AFFIRM the order entered on July 10, 2024, by the Professional Standards and Practices Commission (Commission), only to the extent the Commission overruled the hearsay objection to the indictment itself. We REVERSE the order to the extent the Commission admitted, as non-hearsay, the double hearsay within the indictment. We VACATE the order to the extent the Commission immediately suspended Petitioner's license. We REMAND for proceedings consistent with this decision.

Jurisdiction relinquished.

**LORI A. DUMAS, Judge**